## KUBE v. NEUENFELDT.

1. AUTOMOBILES—NEGLIGENCE—PROXIMATE CAUSE—QUESTIONS FOR JURY—EVIDENCE.
   Questions as to negligence of defendant southbound motorist and proximate cause of accident in which plaintiff, a passenger in westbound car, was injured *held*, properly left to jury for determination, under evidence presented as to speed of the vehicles immediately prior to the collision and the physical facts indicating how collision occurred.

2. SAME—CERTIFICATE OF TITLE—TRANSFER—APPLICATION.
   An assignment of certificate of title to automobile and registration certificate which had been duly indorsed by the transferor and forwarded to department of State and later forwarded to the transferee because of some irregularity *held*, under circumstances presented, to have effected a transfer of title to the transferee in action against the transferee and his son for injuries inflicted upon plaintiff while the son was driving, notwithstanding that at time of accident, the transferee does not appear to have completed application for issuance of title to him (CLS 1956, § 257.233).

3. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—CUMULATIVE TESTIMONY—IMPEACHMENT.
   It was not error for trial court to deny defendants' motion for new trial on ground of newly-discovered evidence, where such claimed evidence appears to have been merely cumulative of testimony actually presented and merely for purpose of impeaching the testimony of plaintiff's witnesses.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobiles and Highway Traffic §§ 1028, 1029.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 163, 165.
[3] 39 Am Jur, New Trial §§ 167–174.

Appeal from Saginaw; O'Neill (James E.); J. Submitted April 10, 1958. (Docket No. 41, Calendar No. 47,032.) Decided June 12, 1958.

Case by Joann Kube against Fred Neuenfeldt, Duane Neuenfeldt and Otto Tessin for personal injuries sustained in automobile collision. Action dismissed as to defendant Tessin. Verdict and judgment for plaintiff against defendants Neuenfeldt, who appeal. Affirmed.

*Maurice Black* (*Bruce H. Mellinger,* of counsel), for plaintiff.

*Ryan, Doozan & Scorsone* (*Curry & Curry*), of counsel, for defendants Neuenfeldt.

CARR, J. Plaintiff brought this action in circuit court to recover damages for injuries, sustained by her in an automobile accident, which she claimed resulted proximately from the negligence of defendant Duane Neuenfeldt. Liability on the part of the other defendants was asserted on the basis that one of them was the owner of the vehicle driven by Duane. On the trial of the cause in circuit court a motion to dismiss as to defendant Tessin was made and granted, and the jury returned a verdict against defendants Neuenfeldt. Motions for judgment notwithstanding the verdict and for a new trial were denied, and defendants Neuenfeldt have appealed from the judgment entered on the verdict.

The accident in question occurred on August 9, 1950, between 8:30 and 9 o'clock in the morning. Defendant Duane, who was the minor son of Fred Neuenfeldt, was driving a Ford automobile in a southerly direction on North Gleaner road in Saginaw county. Plaintiff was riding as a passenger in a Chevrolet car driven by her brother in a west-

erly direction on an intersecting highway. The vehicles came in forcible contact in the intersection, and the driver of the Chevrolet lost control thereof. In consequence said car traversed a distance of 85 feet or more following the impact, rolling over at least once while so doing. Plaintiff was thrown out and sustained serious injuries to her person. The Ford car driven by Duane proceeded across the intersection, stopping on the highway.

At the time of the trial plaintiff was unable to recall the accident or incidents pertaining thereto. There were no immediate witnesses other than the driver of the car in which she was riding and the driver of the Ford. Their versions of the occurrence, and responsibility therefor, differed widely. Duane Neuenfeldt testified, in substance, that as he approached the intersection he observed the Kube automobile, that he slowed down to a speed of between 10 and 15 miles per hour, and came to a full stop approximately 1–1/2 feet from the traveled portion of the intersecting road. He claimed further that the driver of plaintiff's car was proceeding at a speed between 50 and 60 miles per hour, that the Chevrolet "hooked" the left end of the front bumper on the Ford, pulling that car across the road and leaving it headed in a southwesterly direction. It was his testimony that the Ford was pulled between 20 and 25 feet.

The driver of the car in which plaintiff was a passenger claimed that when he was 25 feet from the intersection the Ford was approximately 75 feet therefrom on North Gleaner road, that he concluded that he had time to pass safely through the intersection, and that he accelerated his speed somewhat in the attempt to do so. He insisted that when he observed the Ford its rate of speed was 40 to 50 miles per hour. He stated that he expected it to slow down but, according to his testimony, it did not

do so. It was the claim of the witness that the Ford struck the Chevrolet with such force as to deflect it from its course and to cause the subsequent events.

In moving for a directed verdict on the ground that plaintiff had failed to establish negligence on the part of the driver of the Ford, it was argued that the physical facts were such as to indicate that the collision could not have occurred in the manner claimed by plaintiff. A like argument was made in support of the motion for judgment notwithstanding the verdict, and the claim is renewed on the appeal to this Court. With reference to such facts emphasis is placed on the condition of the front bumper of the Ford following the accident. The bolt securing the left end of said bumper was broken. It is appellants' theory that this condition resulted from the Chevrolet hooking the bumper as it passed in front of the Ford. However, the bumper apparently was bent in rather than being pulled out, and it was a matter for the jury to consider, in determining responsibility for the accident, if the Ford car could have been pulled for a distance of between 20 and 25 feet in the manner claimed by defendants without doing greater damage to the front bumper than the proofs indicate. One of the exhibits returned to this Court with the record is a picture of the Ford taken following the collision. From the situation thus disclosed different inferences are quite possible. In view of the conflicting testimony in the case the questions as to the negligence of defendant Duane Neuenfeldt and the proximate cause of the accident were properly left to the jury for determination.

The decisions in *Blair* v. *Consolidated Freight Company,* 327 Mich 167; and *Carlson* v. *Brunette,* 339 Mich 188, are not of controlling significance here. The facts involved in those cases are readily distinguishable from the situation in the case at bar.

On the record before us it may not be said that the physical facts necessarily negatived plaintiff's right to recover damages, or that such facts render incredible the testimony of the driver of the Chevrolet and of other witnesses who, to a certain extent, corroborated the claim of said driver as to the place where the impact occurred within the intersection.

On behalf of defendant Fred Neuenfeldt it is insisted that the motion for a directed verdict in his favor should have been granted on the ground that plaintiff had failed to establish that he was the owner of the car driven by Duane within the meaning of the Michigan vehicle code.* The testimony relating to this phase of the controversy is not materially in conflict. On the 10th of July, 1950, defendant Otto Tessin was admittedly the owner of the Ford. Prior thereto, according to the testimony of Tessin on the trial, defendants Neuenfeldt had come to his home and negotiated for the purchase of the car for the sum of $75. On the date mentioned Duane and his mother came to Tessin's home, the agreed purchase price was paid, and the car was taken by them. Tessin further testified that it was agreed that the title should be transferred to Fred Neuenfeldt, Duane being a minor. Tessin took the certificate to a notary public who filled out the assignment thereon, whereupon he mailed the instrument to the department of State at Lansing together with the license plate registration certificate. The witness further claimed that at the time payment for the car was made he handed the certificate of title to Duane's mother who signed her husband's name thereon and returned it to him so that he might forward it to the State department.

It is not disputed that Tessin forwarded to Lansing the certificate of title and the registration

* PA 1949, No 300 (CLS 1954, § 257.1 et seq., Stat Ann 1952 Rev § 9.1801 et seq.).

certificate. It is likewise undisputed that the papers were received by the department of State. For some reason, however, not clearly established by the proofs in the case, a new certificate of title was not issued to Fred Neuenfeldt who was, as Tessin testified, designated in the assignment as transferee. The document was not returned to Tessin but was forwarded to Neuenfeldt and received by him. According to his testimony, he assumed that the envelope contained a proper certificate of title of the Ford car, issued to him by the State. The actual fact was not discovered until the latter part of October, following the occurrence of the accident, when the Neuenfeldts undertook to sell the Ford. The envelope was then opened and it was discovered that it contained the certificate originally issued to Tessin. It was taken to a notary public who presumably corrected whatever error or irregularity existed in the document as sent in by Tessin, and returned it to the department of State. Thereupon a new certificate was issued to Fred Neuenfeldt and the sale of the car to the purchaser was completed. It is apparent from the proofs in the case that during the period within which the accident occurred said defendant considered that he was the registered owner of the Ford and that he held a properly issued certificate of title. It is his claim on appeal, however, that because no such certificate was actually issued by the department of State prior to the accident he was not the owner of the car at that time and, therefore, not liable in the present case.

The formalities prescribed by the Michigan vehicle code which must be observed by an owner transferring title to a motor vehicle are specified in CLS 1956, § 257.233 (Stat Ann 1952 Rev § 9.1933). The registration certificate must be indorsed by the transferor, and the name and address of the transferee stated, with the date of transfer. When so

filled out the seller is required to immediately forward it to the State department. The certificate of title must likewise be indorsed with an assignment, duly notarized, and delivered to the transferee at the time possession of the motor vehicle is given. Under the ensuing section it becomes the duty of the transferee, within a period of 10 days, to present the certificate of title to the department of State, accompanied by the required fee, whereupon he is entitled to a new certificate. As before stated, Tessin forwarded the certificate, with the required fee, on behalf of the purchaser. Had the latter opened the communication to him by the department of State at the time it was received he might, and undoubtedly would, have remedied the defect preventing the issuing of a new certificate. Instead of doing so he relied on the assumption that the transfer of title to him had been effected in a proper manner, and that such transfer was indicated by a new certificate. Under the circumstances he was not entitled to a directed verdict on the ground that he was not the owner of the car driven by his son.

The action of the State department in returning the certificate of title indorsed by Tessin to Neuenfeldt, rather than to Tessin, suggests that the assignment was considered effective. Quite possibly the irregularity, or defect, was in the application by the transferee for the issuance of a new title. It is unfortunate that the record does not disclose the exact situation in this regard. However, based on the facts that are established, it would appear that the case of *Fleckenstein* v. *Citizen's Mutual Automobile Insurance Company*, 326 Mich 591, is in point. Involved there was an attempted transfer by the plaintiff to his son of the title to an automobile. Originally such title had been taken in plaintiff's name because the son was a minor. After the son became of age, plaintiff assigned to him the certificate of

title and made due delivery thereof. The car at the time was in the possession of transferee. The document was then sent to the department of State, but no new certificate was issued to the son because he had neglected to sign the provision printed on the back of the certificate requesting the issuance of a new title to him. For that reason the certificate of title was returned to the transferee, as in the case at bar. It was not again forwarded to the department of State. Commenting on the situation presented, it was said (p 597) :

"If the testimony in behalf of plaintiff is accepted, in 1942 plaintiff transferred the title of the Chevrolet automobile to his son Delmar. There is nothing in this record indicating that such title was ever retransferred to plaintiff. It follows that plaintiff was not the owner of the Chevrolet automobile at the time of the 1946 accident."

The holding in the case on the point in question is summarized as follows:

"When a properly assigned certificate of title of a motor vehicle is delivered by the owner to the vendee in possession, title passes, notwithstanding there is delay in forwarding the certificate to the secretary of State." (Syllabus 1.)

"Where minor son purchased a car with title taken in name of plaintiff, and after son reached majority, title was properly assigned to son although new title was not issued to him because of his failure to execute application therefor properly but the title was not retransferred to the father, the latter was not then the owner of the car (CL 1948, § 256.103)." (Syllabus 3.)

In the case at bar the testimony of Tessin as to the transfer and delivery of the certificate of title is not in dispute. In forwarding said certificate with the registration certificate to the department of

State he was acting on behalf of the transferee, to whom said certificate was returned. At the time of the accident defendant Fred Neuenfeldt had such certificate in his possession. The delay in issuing a new certificate was chargeable to him. Under the undisputed facts in the case the conclusion follows that Tessin made a valid transfer of his title to defendant Fred Neuenfeldt, who was in consequence the owner at the time of the accident. *Seppala* v. *Neal,* 323 Mich 697, is not in point because of testimony there introduced tending to show that the certificate of title was not delivered to the transferee until after the accident involved in the case.

The motion for a new trial was predicated, in part, on the claim of newly-discovered evidence coming to the knowledge of appellants after the determination of the case in circuit court. On the trial one of plaintiff's witnesses, who reached the scene shortly after the accident, claimed to have overheard a conversation between Duane Neuenfeldt and a deputy sheriff investigating the occurrence, in which Duane undertook to deny that he had struck the Kube car. In support of the claim of newly-discovered evidence, there was attached to the motion the affidavit of John Spindler in which deponent stated that the witness in question could not have overheard any conversation between the deputy sheriff and the drivers of the automobiles involved, and that he at no time saw the witness and Duane engaged in any conversation. It thus appears that the purpose of the newly-discovered evidence is to impeach the testimony of one of plaintiff's witnesses, and perhaps to contradict another. Duane testified at some length in the case, and covered the matters referred to in the affidavit. Thus if Spindler had been a witness his testimony would have been merely cumulative to that of Duane and, as noted, offered solely to impeach the testimony of plaintiff's witness.

Under these circumstances the trial court was not in error in denying the motion.

We conclude that the trial court did not commit prejudicial error in any of the respects claimed by appellants. In consequence the judgment entered on the verdict of the jury is affirmed. Plaintiff may have costs.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.