Ernest E. RAY

v.

James H. ROSE, Warden, Tennessee State Penitentiary.

Civ. A. No. 6720.

United States District Court,
E. D. Tennessee, S. D.

Feb. 22, 1974.

B. B. Guthrie, Chattanooga, Tenn., for petitioner.

Bart Durham, Asst. Atty. Gen., David M. Pack, Atty. Gen., Nashville, Tenn., Edward E. Davis, Dist.Atty.Gen., Chattanooga, Tenn., for respondent.

## OPINION

FRANK W. WILSON, Chief Judge.

This is a proceeding upon a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 et seq., wherein the petitioner seeks to vacate a conviction and sentence in a case entitled "State of Tennessee v. Ernest E. Ray," Docket No. 11,945 in the Criminal Court for Hamilton County, Tennessee. In that case the petitioner was tried before a jury upon July 23, 1970, and found guilty of first degree murder. He was sentenced to a term of 30 years and one day in the penitentiary.

The petition having been filed *in forma pauperis*, the Court appointed counsel for the petitioner. The case is presently before the Court upon the original and amended petition for habeas corpus, the motion of the respondent for summary judgment, the full transcript of the criminal trial and the opinion of the Tennessee Court of Criminal Appeals affirming the petitioner's conviction and sentence. 489 S.W.2d 849 (1972). Also before the Court is the record upon the state post conviction proceedings. In addition to these matters, an evidentiary hearing was held in this court with respect to the issue of the alleged knowing use by the state of perjured testimony in procuring the petitioner's conviction. Upon this state of the record the exhaustion of state court remedies is conceded and the case is submitted for decision by the Court.

From the record in this case it appears undisputed that the petitioner, along with one Edgar Joe Reed, was charged with having murdered one James William Combs in Chattanooga, Tennessee, upon April 20, 1969. He was tried jointly with the defendant Reed upon the charge, they being represented at the time by separate legal counsel. At the completion of the trial and just prior to the Court instructing the jury, the co-defendant Reed, as a result of plea bargaining, changed his plea to a plea of guilty of second degree murder

and received a sentence of ten years. The case was then submitted to the jury as to the defendant Ray only, with a verdict of guilty being returned and a sentence of 30 years and one day being imposed.

■ It is contended that the trial court committed constitutional error in not requiring the prosecution to turn over written statements given by two prosecution witnesses, Montgomery and Holt, after they had testified. It is asserted that these statements contradicted the testimony given by the witnesses upon direct examination and would have been useful for impeachment purposes. For reasons not reflected in the record, the state trial court declined to require these statements to be produced even though one of them was used to refresh a witness's recollection (Tr. 269). However, this Court has ordered that these statements be made a part of the record in this case and an examination of them reflects that while they do not contradict the testimony given in the state trial, they each omit a material item of testimony given by the respective witnesses in the state trial. The witness Montgomery omitted from her statement, but testified on the trial, that the petitioner Ray had admitted to her his participation in the homicide. The witness Holt omitted from his statement, but testified on the trial, that the victim told him immediately after the assault that, "They are trying to rob me!" However, these facts were eventually brought before the trial jury. In each case the witness admitted upon cross examination the omission of the item of testimony in question from their statement initially given to the police. The police officer having custody of the statements confirmed the omission.

Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, 218 (1963), held that, "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecu-

tion." The reason for the rule, however, "is not punishment of society for misdeeds of a prosecutor, but avoidance of an unfair trial to the accused." *Id.* In this case, any discrepancies between the written statements and the sworn testimony were clearly before the jury, and the failure of the prosecution to turn over the statements, although improper under the circumstances of this case, did not hamper the basic and primary goal of enabling the parties to present their case and affording the jury the opportunity of ascertaining the truth. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (concurring opinion of Justice Powell).

■ It may be noted in this regard that the Federal Jencks Act, 18 U.S.C. § 3500, requiring the prosecution to turn over to the defense written statements previously given by prosecution witnesses is not a codification of a constitutional mandate. *See* Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Accordingly, the principle established therein is not applicable to the states and is not in force in Tennessee or, apparently, in a majority of the states. *See* Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1 (1969), vacated on other grounds, 403 U.S. 711, 91 S.Ct. 2285, 29 L.Ed.2d 820 (1971); annotated 7 A.L.R.3d 181, 198–205, 247–51.

Turning to the final contention of the petitioner, as previously stated, the petitioner was jointly tried for first degree murder along with a co-defendant, Reed. During that trial petitioner's attorney made a number of motions for separate trial, the motions being predicated in part upon the ground that the co-defendant Reed was suspected of having already made an arrangement to plead guilty to a lesser offense. These motions were denied, and the trial proceeded as to both defendants. After the state rested, the petitioner put on no proof, but his co-defendant took the witness stand and related an account of an assault upon the decedent that strongly incriminated the petitioner.

In the course of the cross examination of the co-defendant Reed by the petitioner's counsel, the following testimony was given.

Q   Mr. Reed, have you been promised anything in exchange for getting —going on the stand and testifying in this case?

A   No, I haven't.

Q   Has any deal been made by you between you and the District Attorney to encourage you to take the stand to testify?

A   No.

Q   No promises made to you?

A   No. (Tr. 347)

Counsel for the defendant Ray was never advised by the state's attorney of a standing offer to plea bargain with the co-defendant Reed and no correction or modification of the foregoing testimony of Reed was ever offered or made by the state's attorney.

Following Reed's testimony, the petitioner then took the stand and rebutted Reed's version of the affray. At the close of the trial, and just before the Court instructed the jury, the co-defendant Reed, as a result of a plea bargain, was allowed to plead guilty to second degree murder and was sentenced to ten years in prison. The case was then submitted to the jury as to the defendant Ray only, with a verdict of guilt and a sentence of 30 years and one day being returned by the jury.

With regard to the plea bargaining that occurred in the criminal trial, the evidence is undisputed that the attorney for the prosecution conveyed a standing offer to the defendant Reed prior to the commencement of the criminal trial to recommend a ten year sentence in return for a plea of guilty to second degree murder. There is some dispute in the evidence as to whether Reed made his decision to accept this offer before or after taking the witness stand to testify, but the clear weight of the evidence reflects that, acting upon the advice of his attorney, he elected to wait until the completion of the evidence and the argument before advising the prosecution of his decision to accept the offer.

■■   It has long been settled in the law that the knowing use by the prosecution of false evidence material to the issues in a criminal trial constitutes a denial of due process and that a conviction obtained by the use of such evidence cannot be permitted to stand. Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340, 79 L.Ed. 791 (1935); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972). The same result obtains when the state, although not soliciting false evidence, silently but knowingly allows it to go uncorrected when it appears. Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Napue v. Illinois, *supra*. That the falsity within the evidence may bear only upon the credibility of the witness, rather than upon the guilt of the accused, is not sufficient to render it immaterial. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, *supra*. These rules are well summarized in the case of Giglio v. United States, *supra*, wherein the Court stated:

"As long ago as Mooney v. Holohan . . . this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' This was reaffirmed in Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L. Ed. 214 . . . In Napue v. Illinois . . . we said 'the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' . . . Thereafter Brady v. Maryland . . . held that suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution' . . . When the 'reliability of a given witness may well be determinative of guilt or innocence,' non disclosure of

evidence affecting credibility falls within this general rule. . . . A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .' " (Citations omitted)

■■ The state acknowledges these rules, but contends that they are inapplicable to the facts here presented and that for two reasons. In the first place, it is earnestly urged upon the Court that the evidence elicited from the witness Reed upon cross examination was in no way false, as in fact no "deal" had been made with him as of the time his testimony was given. Although acknowledging a standing offer had been made by the state to plea bargain with the witness, it is insisted that no "deal" was in fact made until the offer was accepted by the witness after the completion of his testimony. The fallacy of this line of reasoning is apparent when it is recognized that the credibility of the witness is placed in issue by promises made as well as by "deals" concluded. In fact, an unperformed promise might be more influential in persuading desired testimony than would be a concluded agreement. Accordingly, pending plea bargaining negotiations with the witness, as well as concluded bargains, are of at least equal relevance in testing the witness's credibility. As stated by the Court in the case of United States v. Fontenot, 483 F.2d 315, 325 (5th Cir. 1973),

> "The failure of the Government to disclose to the defense and to the trial jury the existence of *plea bargaining negotiations* with a key witness deprives a defendant of Fifth Amendment due process of law." (Emphasis added)

Furthermore, it should not be overlooked that the witness Reed not only denied the existence of a "deal," but also denied that any "promises" had been made that might influence his testimony. Reed's testimony was clearly false when given.

■ It is next contended by the state that the rules of law here under discussion have no application to the facts of this case in that Reed was not presented as a witness for the prosecution, but rather he took the stand in his own defense. The rules announced in Giglio v. United States, *supra,* and cases therein cited, are not limited in their application only to witnesses called by the prosecution. The prosecution may not sit silently by and be relieved of the duty of correcting a known falsehood simply because the witness testifying was not called by it to testify. This is particularly so where the state itself enabled the falsehood to arise by its own undisclosed plea bargaining activities.

In this case, the co-defendant Reed identified the petitioner as the one who had actually committed the homicide. It was this witness who may have been impeached if it were made known to the jury that the state had offered him a way to escape from a jury determination of guilt and punishment. As it was, the jury may in fact have given added weight to his testimony since he admitted his own involvement. If it had been made known to the jury that Reed had nothing to lose by his testimony, the jury might have afforded less weight to it than was the case. At any rate, the facts in this regard should not have been knowingly withheld from the jury by the prosecution.

It is accordingly apparent that the failure of the state to disclose plea bargaining negotiations with the witness Reed when he denied the existence of the same is incompatible with "rudimentary demands of justice" and a violation of due process.

An order will therefore enter setting aside the petitioner's conviction and sentence and affording the state 90 days within which to grant the petitioner a new trial or otherwise he will thereupon be relieved from further prosecution, custody or restraint thereunder.