George L. SCOTT, Petitioner,

v.

Dale FOLTZ, Respondent.

Civ. A. No. 84–CV–0418–DT.

United States District Court,
E.D. Michigan, S.D.

May 13, 1985.

As Corrected May 28, 1985.

Arthur J. Tarnow, Detroit, Mich., for petitioner.

Thomas J. Kulick, Asst. Atty. Gen., Lansing, Mich., for respondent.

### OPINION *

COHN, District Judge.

#### I

On November 1, 1979, Petitioner was convicted of two counts of armed robbery, Mich.Comp.Laws § 750.529, by a jury in the Monroe County Circuit Court. He is currently serving two concurrent terms of twenty to sixty years at the State Prison of Southern Michigan at Jackson.

On September 23, 1981, with one dissent, the Michigan Court of Appeals affirmed the conviction in an unpublished opinion. (Docket No. 49375). Subsequently, on March 29, 1983, the Michigan Supreme Court issued an order as follows:

> The prosecutor is ordered to show cause in writing within 30 days of the date of this order, why the defendant's conviction should not be reversed because of the failure of the prosecutor to disclose the plea bargain with witness Margaret Murry and his failure to correct the false inference from her testimony that no promise had been made to her in return for her plea of guilty.

and thereafter, rather than deciding the question, inexplicably denied leave to appeal, with one dissent, on September 21, 1983. (Docket No. 68785). Now before the Court is Petitioner's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] For the reason which follows a writ of habeas corpus will issue conditionally.

---

* Corrected May 28, 1985.

1. Counsel has since been appointed for Petitioner. Neither party has filed briefs.

2. The man standing by the car was identified at trial as Augusta Turner. He drove the car away.

#### II

#### A

The only real issue at Petitioner's trial was Petitioner's alleged accomplices' credibility. As stated in the prosecution's opening statement: "They ... will be the essential witnesses in this case." (Trial Transcript, p. 64).

Two sisters, Gloria Gentry and Hazel Hodge, testified that they were robbed at knifepoint by two women at a rest stop on southbound Highway 23 in Monroe County. After the robbery, they saw the two women go to a car at which a man was standing.[2] The three entered the car and drove away with a fourth person already in the car. The sisters identified the driver as a man but were unable to identify a passenger in the car as either being male or female.[3] The sisters did not see either robber give anything to anyone in the car. Neither sister was able to identify Petitioner.

The only evidence that linked Petitioner to the crime was the testimony of the two robbers themselves, Margaret Murry and Beverly Jordan. They each testified that Petitioner had taken them to the rest stop for purposes of prostitution. When they arrived there, however, Petitioner gave them a knife and told them to rob Gentry and Hodge. After the robbery, Murry and Jordan gave the money they took ($122.00) to Petitioner. The car belonged to Petitioner.

While Petitioner admitted being at the rest stop with Murry, Jordan and Turner, he denied knowing anything about the robbery beforehand. He did admit that Jordan gave him $20.00 after she returned to the car and that his knife had been used. He specifically denied having taken Murry

---

3. The Michigan Court of Appeals erred when it stated that the two victims testified that: "A black man was standing by the car, and another man was inside it." Op., p. 1. See Trial Transcript, p. 72.

and Jordan to the rest stop for purposes of prostitution.[4]

### B

Murry testified for the prosecution at the preliminary examination held May 21, 1979. At the preliminary hearing, the following exchange occurred during the direct examination of Murry under questioning by an assistant prosecuting attorney:

Q: Also has the Prosecutor's Office or I as a member of that office—has anyone promised you anything in order to have you testify here today?

A: No.

(Preliminary Examination Transcript, p. 6). An assistant prosecuting attorney was also present at Petitioner's arraignment on June 8, 1979. Thereafter, on July 2, 1979, Jack Vitale was appointed as a special prosecutor on the petition of the Monroe County Prosecuting Attorney to handle the trial. The petition for appointment is attached as Appendix A.

At the trial, at which Petitioner was represented by an attorney appointed on June 8, 1979, the following exchange occurred during Murry's direct examination:

Q: You've been charged with the crime of armed robbery have you not?

A: Yes.

Q: And how has that case been disposed of?

A: It haven't [sic]. I go back the 11th of October.

Q: For what?

A: For my sentence.

Q: Did you have a trial?

A: No.

Q: Did you plead guilty?

A: Yes.

Q: Do you know if you were promised—were you promised anything in return for the plea of guilty.

A: No.

Q: Were you promised anything in return for your testimony here today?

A: No.

Q: Are you telling the truth?

A: Yes.

(Trial Transcript, pp. 97–98).

During closing arguments, the special prosecutor vigorously argued in rebuttal that Murry was to be believed because she had not made a bargain for her testimony: "They [Murry and Jordan] were not promised anything, no one said we're going to give you this for your testimony, or anything else. They're here to tell the truth and that's all." (Trial Transcript, p. 245).

However, Murry did in fact plea bargain and was promised something. Her plea agreement was summed up by the trial court as follows:

The plea bargain, as set forth in the transcript, is that [Murry] would enter a plea of guilty to the third count; that is assault with intent to rob and steal while armed. The People would make no recommendation regarding Youthful Trainee status and that if the Court decided not to grant Youthful Trainee status the prosecutor would recommend a minimum jail time of two years if the court is going to sentence to jail and reject the Youthful Trainee. That was corrected to a maximum of two years. And further, that she would testify in any further court proceedings against two male subjects believed to have been involved in this who have not yet been charged.

(Motion for New Trial Transcript, p. 38). Murry pleaded guilty on November 11, 1978, a few months before Petitioner was charged. The Monroe County Prosecuting Attorney's letter dated November 9, 1978, memorializing the plea agreement to Murry's attorney, L.E. Merman, is attached as Appendix B.

### C

Eventually, Petitioner's trial counsel filed a motion for a new trial based on newly discovered evidence. He told the trial court that he did not know about the

---

**4.** The Michigan Court of Appeals incorrectly stated that Petitioner testified that he had come to the rest area for prostitution purposes. Op., p. 2. See Trial Transcript, p. 214.

plea bargain between the Monroe County Prosecuting Attorney and Murry until he just happened to attend Murry's sentencing approximately a week before the hearing on the motion. During oral argument, the trial court responded to Petitioner's counsel by saying that Murry's plea and sentence was a matter of public record. Petitioner's trial counsel in turn said that he had been told by the Prosecuting Attorney that there had been no plea bargain with Murry.[5] (Motion for New Trial Transcript, p. 11). To this, the trial court replied, "Well, the Prosecutor is not the horse's mouth, you know." (Motion for New Trial Transcript, p. 11). Petitioner's trial counsel then pointed out that the court files did not contain a transcript of Murry's plea. To this, the trial court said, "You could have got one easily by requesting it." (Motion for New Trial Transcript, p. 12). In the end, the trial court denied the motion for a new trial ruling that, through due diligence, Petitioner's trial counsel could have discovered the plea bargain before trial. (Motion for New Trial Transcript, p. 43).

### III

### A

■ This case is directly controlled by *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1971). In *Napue*, the principal state witness testified that he received no consideration in return for his testimony. The Illinois State's Attorney who prosecuted the case, however, had himself worked out an agreement with the witness. In reversing, a unanimous Supreme Court ruled: "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.... The same result obtains when the State, although not soliciting false evidence, allows it to go

5. The Prosecuting Attorney himself personally handled Murry's case and signed the letter of

uncorrected when it appears...." 360 U.S. at 269, 79 S.Ct. at 1177.

### B

Rather than considering either *Napue* or *Giglio*, however, the Michigan Court of Appeals addressed the issue as follows:

In light of the discrepancy between the real plea bargain and witness' testimony, we are not convinced that it was technically perjury, i.e., a willful false statement upon material facts sworn to be true. *People v. Hoag*, 89 MichApp 611, 617–619; 281 NW2d 137 (1979), *lv den*, 407 Mich 743 (1979). Indeed the framing of the question leads to various interpretations. Further, the record shows that she was not promised something as an inducement to testify "adversely" to defendant. She easily could have misunderstood the thrust of the question.

Moreover, assuming the witness intentionally lied as to her plea bargain, we find no reversible error in the trial court's denial of defendant's motion for new trial. Defendant's motion was based on the ground that the fact of the perjury was newly discovered evidence. The grant of a new trial on the ground of newly discovered evidence is discretionary with the trial court. *People v. Howard*, 78 MichApp 592; 261 NW2d 15 (1977).

"In order for the defendant to be entitled to a new trial it must be shown that the evidence was newly discovered and not merely cumulative, that the party offering the new evidence could not have discovered and produced it at trial with reasonable diligence, and that its use would probably render a different result on a retrial of the matter. *People v. Barbara*, 400 Mich 352, 362; 255 NW2d 171 (1977)." *People v. Van Dorsten*, 96 MichApp 356, 359; 292 NW2d 134 (1979), *rev'd on other grounds*, 409 Mich 942 [298 N.W.2d 421] (1980).

November 9, 1978.

Generally, where the new evidence is useful only to impeach a witness, it is deemed merely cumulative. *People v. Barbara, supra* [400 Mich. at], 363 [255 N.W.2d 171]; *Kube v. Neuenfeldt,* 353 Mich 74; 90 NW2d 642 (1958).

Murry's plea bargain was useful only to impeach Murry's testimony. It only might have been pertinent to her motive for testifying, and would not have directly contradicted her testimony as to any of the material facts concerning defendant's alleged crime. For this reason, it would be difficult to conclude that "its use would probably render a different result on a retrial of the matter." This is especially so since corroborating testimony was given by another accomplice who had not entered into any plea bargain. Finally, as the court noted in the order, and at several points in the new trial motion hearing, the existence of the plea bargain could have been discovered and produced at trial with reasonable diligence since the files in Murry's case were available to defense counsel.

In view of the ambiguity in interpreting the above excerpt of testimony, it cannot be said that the prosecutor was under an affirmative duty to correct any misimpressions arising out of the testimony.

(Court of Appeals Op., pp. 8–9).

The dissenting judge in the Michigan Court of Appeals, however, saw the matter quite differently and, as will be seen, correctly:

Technically, perhaps Ms. Murry was not "promised" anything in return for guilty plea or testimony. However, it is plain that her agreement to testify was part and parcel of the plea agreement entered into with the prosecution. Through that agreement, Ms. Murry, a direct participant in these robberies, was able to plead to a single lesser offense.

I believe that under the circumstances of this case the prosecutor had a duty to reveal the plea bargain to the jury. Due process requires that a prosecutor inform a jury of such bargains in certain situations. *Giglio v. United States,* 405 US 150; 92 SCt 763; 31 LEd2d 104 (1972), *People v. Atkins,* 397 Mich 163; 243 NW2d 292 (1976), *People v Nettles,* 41 MichApp [215] 715; 199 NW2d 845 (1972). In *People v. Tillman,* 85 MichApp 425; 271 NW2d 261 [1978] (1968), *rev on other grds,* 406 Mich [898] 848; 276 NW2d [456] 450 (1979), this court noted the types of situations calling for disclosure.

"[T]he cases generally fall into three broad categories: (1) a prosecutor's refusal of a defense request for material, the precise nature of which is unknown to the defense, (2) the prosecutor's duty to disclose exculpatory evidence unknown to the defense without a request being made, or (3) prosecutorial use of false testimony, knowing it to be false. See, *e.g.,* 360 US 264; 79 SCt 1173; 3 LEd2d 1217 (1959). *Brady v. Maryland,* 373 US 83; 83 SCt 1194; 10 LEd2d 215 (1963), *Giglio v United States, supra,* and *United States v. Agurs,* 427 US 97; 96 SCt 2392; 49 LEd2d 342 (1976).

I believe the present circumstances fit within both categories (1) and (3). As stated in *People v. Lytal,* 96 MichApp 140, 156; 292 NW2d 498 (1980), the prosecution is under a duty to disclose any deal made in exchange for a witness's testimony of which the defense does not have specific knowledge. Moreover, at the request of the defense the prosecution must disclose such information to the jury. Even absent a defense request, disclosure must be made when false information is otherwise presented to the jury. *Id.*

Here, there was no defense request that the jury be informed of Ms. Murry's plea bargain with the prosecution. The failure of defense counsel in this regard was readily explained in the motion for new trial. Defense counsel stated at the hearing on the motion and in his affidavit supporting the motion that he had asked the prosecutor about plea bargains with the accomplice witnesses and that he had been advised that none had been made.

The trial court found this deception to be of little consequence, since defense counsel might have discovered the plea agreement on his own. I disagree. Although we operate in an adversary system of justice, it must be remembered that the prosecutor's duty is not merely to convict but to see that justice is done. *People v. Farrar*, 36 MichApp 294, 299; 193 NW2d 363 (1971). I believe defense counsel had a right to rely on the prosecutor's representation that no plea bargains had been made. Thus, I would view the representation as an improper refusal of a defense request for material producing a corresponding duty to reveal the material to the jury.[1]

The plea bargain should have been revealed by the prosecutor for a second reason, to correct the false impression given to the jury that no deal had been made with Ms. Murry. If Ms. Murry's testimony that she was not "promised" anything was not directly false, it was only because of the artful phrasing of the prosecutor's questions. The examination was nevertheless deceptive since it implied that there was no connection between Ms. Murry's decision to testify and the disposition of the charges against her. Moreover, it is readily apparent that this was the very design of the questioning. It was a means to bolster Ms. Murry's credibility. I conclude that defendant was denied due process of law by the prosecutor's failure to apprise the jury of the truth with regard to the witness' plea bargain.

---

[1] The prosecutor's representation is not excused by the fact that Ms. Murry's case was handled by a second assistant prosecutor. The prosecutor's office is to be treated as an entity in this regard. *People v. Atkins*, 397 Mich. 163, 174, 243 N.W.2d 292 (1976).

(Court of Appeals Op., pp. 2–3, dissent).

## IV

Respondent raises a number of arguments against Petitioner's entitlement to a new trial. Each will be addressed along with the arguments raised by the Monroe County Prosecuting Attorney before the Michigan appellate courts.

## A

■ Respondent argues, and the Michigan Court of Appeals agreed that Petitioner was not entitled to a new trial because the evidence that Murry had plea bargained did not, or would not, contradict substantive evidence of guilt. It would merely have impeached credibility. This argument, however, was explicitly rejected in *Napue, supra*, 360 U.S. at 269, 79 S.Ct. at 1177:

> The principal that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may not be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

## B

■ Both the trial court and the Michigan Court of Appeals placed the burden on Petitioner's counsel at trial for not having ascertained the existence of the plea bargain before trial. This ruling, however, was incorrect. *Napue* and *Giglio* clearly place the burden on the government which should have known about the apparent perjury and prevented it. *United States v. Rosner*, 516 F.2d 269, 280 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). See also *Haber v. Wainwright*, 756 F.2d 1520 (11th Cir., 1985). A conviction must fall where the prosecution, although not soliciting it, allows perjured testimony to go uncorrected when it appears even though it is relevant only on the issue of credibility. *Giles v. Maryland*, 386 U.S. 66, 74, 87 S.Ct. 793, 797, 17 L.Ed.2d 737 (1966).

## C

Before the Michigan Supreme Court, the Monroe County Prosecuting Attorney argued that *Napue* did not apply because the prosecutor who tried the case had not himself known about the plea bargain. *Giglio*, however, rejected this argument. In *Giglio*, the Assistant United States Attorney had not known about the plea bargain with the witness and did not realize that the witness was not being truthful when he denied such a bargain. The plea agreement had been reached with another Assistant United States Attorney in that office. In a 7–0 opinion, the Supreme Court stated:

In the circumstances shown by this record, neither [the] authority [of the Assistant U.S. Attorney who made the agreement] nor his failure to inform his superiors or his associates is controlling. Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is a spokesman for the Government. A promise made by one attorney must be attributed, for these purposes to the Government.... To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it.

405 U.S. at 154, 92 S.Ct. at 766.

## D

Before the Michigan Supreme Court, the Monroe Prosecuting Attorney argued that *Giglio* is distinguishable because the special prosecutor was not a member of the Monroe Prosecuting Attorney's Office and, as such, constituted a separate entity. In Michigan, an appropriate court may appoint a special prosecutor to perform the duties of the county prosecutor. Mich. Comp.Law § 49.160(2). The special prosecuting attorney is "vested with all of the powers of the prosecuting attorney for the purpose of the appointment and during the period of appointment." Mich.Comp.Law § 49.160(3).

 Under certain circumstances, where the prosecutor has no actual knowledge of the perjury, it will not be imputed to him. See *United States v. Diecidue*, 448 F.Supp. 1011 (M.D.Fla.1978). Here, however, knowledge must be imputed to the special prosecutor.

At the preliminary examination on May 21, 1979, when an assistant Monroe county prosecuting attorney was handling the case, Murry testified that there had been no plea bargain even though one had been arrived at about a half year earlier. After the sentencing of Petitioner the Monroe County Prosecuting Attorney resumed control over the case for the appeals through the state appellate courts.

Mich.Comp.Law § 49.160(1) allows a county prosecutor in Michigan to petition the Circuit Court to appoint a special prosecutor if the prosecuting attorney "is disqualified by reason of conflict of interest or is otherwise unable to attend to the duties of the office." In the present case, the only reason given for the appointment was that a new assistant, L.E. Merman, had previously represented Murry. The petition did not, however, explain how this amounted to a conflict of interest. First, Murry pleaded guilty even before Petitioner was charged. Second, Merman was at no time assigned to Petitioner's case. Third, the petition failed to explain why none of the other assistants could not have handled the case.[6] The record (Trial Transcript, p. 10) showed there were eight lawyers in the Monroe County Prosecuting Attorneys' Office. At oral argument, Respondent acknowledged that the record did not justify the appointment of a special prosecutor.

Furthermore, the special prosecutor was not really independent. Unlike the special

---

**6.** At oral arguments, the Court suggested that an evidentiary hearing be held to determine exactly why a special prosecutor had to be appointed.

Both parties declined the offer. The Court will rely on the record as it is and draw reasonable inferences.

prosecutors in cases like Watergate, Vitale apparently had no independent investigative staff. In this case, he, in essence, was merely an assistant prosecutor assigned to a particular trial. The Monroe County Prosecutor himself knew that a deal had been struck with Murry; he struck the deal. He also signed the petition for the appointment of the special prosecutor. He also, under *Giglio*, constructively knew that Murry had made a false statement at the preliminary examination which an assistant had conducted. Despite this knowledge, he did not see fit, despite *Napue*, to inform either the special prosecutor specifically appointed to try the case or Petitioner's trial attorney. In such a situation, under *Giglio*, he had the duty to inform the special prosecutor of the state of affairs and to correct the record of the preliminary examination.

The special prosecutor was in a far better position to ascertain the truth than Petitioner's trial counsel. *Giglio* specifically laid the burden on the "government." On this record, the special prosecutor was the "government." Under the circumstances of this case, the knowledge of the Monroe County Prosecuting Attorney must be imputed to the special prosecutor.

**E**

■ In its opinion, the Michigan Court of Appeals doubted whether Murry's testimony was even perjury. Respondent makes a similar argument. Respondent concedes, however, that Murry's testimony misled the jury into believing that she had not entered into an agreement with the prosecution. In fact, the prosecution specifically asked Murry questions for the specific reason to negate any inference of a deal for her testimony as evidenced by his argument in closing rebuttal: "[Murry and Jordan] were not promised anything, no one said we are going to give you this for your

testimony or anything else. They're here to tell the truth and that's it." Whether Murry could properly be charged with perjury under state law or not, the jury was clearly misled.[7] This "false evidence" is precisely what the rule of *Napue* and *Giglio* was designed to prevent. See *Hilliard v. Williams*, 516 F.2d 1344, 1349 (6th Cir. 1975), *vacated on other grounds, sub nom. Williams v. Hilliard*, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976); *Armour v. Salisbury*, 492 F.2d 1032 (6th Cir.1974); *Ray v. Rose*, 371 F.Supp. 277 (E.D.Tenn. 1974).

**F**

Citing *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), Respondent last argues that this Court should deny the writ because, even if the false evidence has been exposed, it could not have created a reasonable doubt that would not otherwise have existed. *Agurs*, however, is inapposite. In *Agurs*, the Assistant United States Attorney had failed to provide the defense counsel with a copy of one of the prosecution's witness' criminal record. The Supreme Court specifically noted in *Agurs* that there was no inference of perjury. 427 U.S. at 114, 96 S.Ct. at 2402. In fact, *Agurs* specifically retained the *Napue* standard for false testimony cases. 427 U.S. at 103, 96 S.Ct. at 2397. See *United States v. Runge*, 593 F.2d 66 (8th Cir.1979), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979); *United States v. Turner*, 490 F.Supp. 583, 598–599 (E.D.Mich.1979). Thus, the standard to be applied in this case is: "A new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury....' *Napue, supra* [360 U.S.] at 271 [79 S.Ct. at 1178]." *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766.[8]

At oral argument, Respondent pointed out that Petitioner admitted both owner-

---

7. Neither party has discussed the question of the affirmative obligations of the prosecutor in the circumstances of this case. See *American Bar Association Standards for Criminal Justice, Chapter 3: The Prosecution Function* and partic-

ularly Standard 3–2.8; *Relations With the Courts and Bar.*

8. Respondent acknowledged this as the proper standard at oral argument.

ship of the knife and that he had received $20.00 from Jordan. Respondent further argued that even if Murry's testimony were completely stricken, the jury would still have convicted. Finally, Respondent argued that Jordan corroborated Murry's testimony.

Although each of these points has some merit, the argument begs the question. The trial was essentially a credibility contest. Jordan against Petitioner is one matter, but Jordan and Murry against Petitioner is another. As noted above, only Jordan and Murry, the robbers themselves, in any way implicated Petitioner. The prosecution presented no other evidence corroborating their testimony. Consequently, the evidence was by no means overwhelming. Furthermore, the trial court did not give the Michigan accomplice jury instruction. Michigan Standard Jury Instruction 5:2:03.

The jury might very well have hesitated if it had known not only that Murry had in fact plea bargained for her testimony but had also falsely denied it at Petitioner's preliminary examination.[9] Under these circumstances, the Court finds that there was a reasonable likelihood that Murry's false testimony could have affected the jury's judgment. If the present case does not require a new trial under *Napue*, it is hard to conceive of one that does.

In recent years, the availability of the writ of habeas corpus has come under attack. Critics have claimed that habeas review defeats finality and damages federal-state relations. However, as stated in *Stone v. Powell*, 428 U.S. 465, 491, fn. 31, 96 S.Ct. 3037, 3051, fn. 31, 49 L.Ed.2d 1067 (1976), "those to whom the writ should be granted 'are persons whom society has grievously wronged.' " This case provides ample reason for continuing federal habeas oversight over state convictions. What the record shows is an indifferent trial judge, a divided intermediate appellate court and a vacillating high court. Regretfully, the Michigan state courts failed even to ac-

knowledge the question of a prosecutor's duty in such a case as this.[10]

For the foregoing reasons, a conditional writ of habeas corpus will issue. Petitioner shall be granted a new trial within sixty days or must be unconditionally released at that time. An appropriate order will be entered.

## APPENDIX A

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF MONROE

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff,

vs.

GEORGE LAVELLE SCOTT, Defendant.

File No., 17718 79

### PETITION FOR APPOINTMENT OF SPECIAL PROSECUTOR

Now comes Michael W. LaBeau, Prosecuting Attorney in and for said County, and in accordance with the terms of MSA 5.758, hereby requests the Court to appoint a Special Prosecutor in the above entitled matter, as L.E. Merman, who is now an Assistant Prosecuting Attorney for said County, had previously appeared on behalf of the co-defendant in said action prior to his appointment to the Prosecutor's Office.

WHEREFORE, Your Petitioner requests that JACK VITALI be appointed Special Prosecutor in the above entitled case.

FURTHER, Your Petitioner hereby requests that the Special Prosecutor be paid for his services rendered as Special Prosecutor by the County of Monroe.

DATED: June 28, 1979

_____

Michael W. LaBeau, Prosecutor

---

9. As it was, at one point during deliberations the jury announced that it could not reach a verdict.

10. See footnote 7.

### ORDER

At a session of said Court, held in the Courthouse, in the City of Monroe, on the 2 day of July, 1979.

Present: HONORABLE JAMES J. KELLEY, Circuit Judge.

Upon the reading and filing of the Petition of Michael W. LaBeau, Monroe County Prosecuting Attorney, requesting that a Special Prosecutor be appointed in and for the County of Monroe to represent the Plaintiff in the above entitled case;

IT IS HEREBY ORDERED, That JACK VITALI is appointed Special Prosecutor in and for said County, to act in the above entitled case, and will be paid for services rendered by the County of Monroe.

/s/ James J. Kelley
James J. Kelley, Circuit Judge

### APPENDIX B

November 9, 1978

Mr. L.E. Merman
Attorney at Law
P.O. Box 652
Monroe, Michigan
 Re: People v. Margaret Murry
 Our file # 12332

Dear Brooks:

The following plea agreement would be agreeable with this office:

1. Your client will plead guilty to a reduced charge of Assault With Intent to Rob While Armed, which carries a maximum of life imprisonment, but she can receive a probation sentence under such a charge. The charge would deal with Gloria Gentry as the victim.
2. In return for such a plea, we will dismiss the present Counts I and II charges of Robbery Armed.
3. In regards to sentencing, we will remain neutral and simply take no position, particularly as to your request for Youthful Trainee Status. However,

we will add that our recommendation would be, if the Judge feels that a prison sentence must be imposed, that said sentence be for a term of years and that the minimum set on said term be not more than two (2) years.

4. Also, your client, as part of the agreement, is agreeing to testify against the two (2) male subjects that aided or abetted in this crime, their names which are believed to be Gus Turner and George Scott.

I believe the above fully states the plea agreement we have entered into this date.

 Sincerely,
 OFFICE OF THE
 PROSECUTING ATTORNEY
 Michael W. LaBeau