Melvin DuBOSE, Petitioner-Appellant,

v.

Eugene LEFEVRE, Superintendent, Clinton Correctional Facility, Respondent-Appellee.

No. 876, No. 79–2234.

United States Court of Appeals, Second Circuit.

Argued March 11, 1980.

Decided April 23, 1980.

**974**

Barry Bassis, The Legal Aid Society, New York City (Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Charlotte C. Lee, Deputy Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., of the State of New York, Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before FRIENDLY and MANSFIELD, Circuit Judges, and SIFTON, District Judge.*

MANSFIELD, Circuit Judge:

This appeal from the denial of a petition for the writ of habeas corpus presents an episode of prosecutorial use of and failure to correct a witness' false testimony in a criminal trial. We reverse.

Petitioner Melvin DuBose was convicted of second degree murder (N.Y.Penal Law § 125.25(2)) on June 5, 1975, after a jury trial in the New York Supreme Court, Bronx County, before Justice Donald Sullivan. The charges arose out of the 1970 death of DuBose's 9-year old son Ronaldo, allegedly as the result of a beating by DuBose. The State's case relied almost entirely on the testimony of one Nancy Edwards, formerly DuBose's girlfriend, an admitted prostitute, cocaine user, convicted of disorderly conduct, who had been held at Rikers Island on criminal charges for several months before she testified. She was the sole witness to the crime, and was under a felony indictment for hindering prosecution and helping dispose of the body. She gave extensive testimony implicating DuBose in the murder.

The State had little other persuasive evidence. Due to the lapse of time between the murder (as described by Edwards) and discovery of the skeleton in a box cemented in the basement of the building where DuBose and Edwards had lived, medical examiners could not identify the remains or determine the cause of death. Edwards' 12-year old son testified that DuBose had sometimes abused Ronaldo and that around the time of the murder (five years earlier) there had been a smell "[l]ike meat rotting" in the apartment. A neighbor testified that in 1974, during the police investigation, DuBose had made an oblique comment to the effect that "all he did was beat him and put him to bed" and referred to "the thing-a-ma-jigs and the rocks and the basement." There was also an incoherent and frenzied statement by DuBose in 1974 when he went to the police station looking for one of the investigating officers, and, while dashing his head on a railing, said something described by various witnesses as "I killed him" or "I kill 'im" or "I'll kill him" and later, while rolling on the floor, accused the investigator of tricking him. The prosecution contended this was a confession. The jury acquitted DuBose of intentional murder but convicted him of murder with depraved indifference.

During the cross-examination of Nancy Edwards on June 2, 1975, the defense attempted to cast doubt on her credibility by showing that she had made a deal with the State for reduced charges in exchange for her cooperation. The following exchange took place, in which Edwards denied that the prosecution had offered her anything:

* Of the United States District Court for the Eastern District of New York, sitting by designation.

"Q: And what has [your attorney] told you? *Has anything been promised to you in return for your testimony?*

. . . . .

A: *No.*

Q: You never asked your lawyer, what's in it for me if I testify against the defendant? What about my charges? What's going to happen? You never asked him that?

A: He told me he thought it would go easy for me if I did.

. . . . .

Q: [Y]ou're giving testimony, hoping understandably, that you will be given your freedom? Isn't that it in a nutshell?

. . . . .

A: I doubt that is possible. I'm told hindering prosecution will get you fifteen years.

. . . . .

Q: How many times have you discussed this case with the District Attorney's Office? . . .

A: How many times have I discussed it? The last two days.

Q: Prior to that time, did you have any discussions with the District Attorney?

A: No.

Q: And your lawyer has told you, that in his opinion your best bet is to testify for the People and hope for leniency?

. . . . .

A: He said it would probably [go] easier on me if I did." (Emphasis supplied).

On redirect, Assistant District Attorney Edward Hayes returned to this matter:

"Q: *Have I or any other Assistant District Attorney or anyone offered you any kind of deal or any kind of promise or anything in regard to your testimony today?*

A: *No.*

Q: Have you—you've had conversations with me on a number of occasions, is that correct?

A: Yes.

Q: At any time, have I offered you any kind of promise or any kind of deal?

A: No.

Q: You understand that what you said today can be used against you at your trial? Do you understand that?

A: I know that." (Emphasis supplied).

In his summation to the jury, Assistant District Attorney Hayes not only argued that Ms. Edwards had not made any deal with the prosecutor in exchange for her testimony but had chosen to testify to the truth with knowledge that it could only lead to continuation of her existing jail confinement.

On June 9, 1975, four days after DuBose was convicted, Nancy Edwards was allowed to plead guilty before Justice Bloustein of the New York Supreme Court, Bronx County, to a misdemeanor charge instead of to the felony charges pending against her and was sentenced to time already served, on the prosecution's recommendation. The parties to the June 9th proceeding before Justice Bloustein were Assistant District Attorney Helen Johnson, defendant Nancy Edwards and her attorney Pablo Diaz. In contrast to the testimony at DuBose's trial that Edwards had not been offered any deal or promise of any kind for her testimony, the prosecutor represented to the court:

"MS. JOHNSON: People respectfully recommend acceptance of the offered plea which is offered by defendant to plead guilty to hindering prosecution as misdemeanor under the second count of the indictment to cover the entire indictment. The facts substantially are these: in the county of the Bronx; on or about May 30, 1970, the defendant Nancy Edwards, did render criminal assistance to one Melvin Dubois [sic], who committed the crime of manslaughter second degree. We submit Your Honor that the People have just completed a lengthy and complicated case in which Mr. Dubois [sic] was the defendant, in an action and ultimately he was convicted of murder.

THE COURT: By a jury?

MS. JOHNSON: By a jury. In relationship to the death of two of his children who were the subject of the indictments handed down by the Grand Jury, Bronx County as against Melvin Dubois. At the murder trial as against Mr. Dubois [sic], Miss Edwards testified at length.

THE COURT: On behalf of the People?

MS. JOHNSON: On behalf of the People, and it was in great part as a result of her testimony that the defendant was ultimately convicted of murder. *Now, pursuant to our agreement, Judge, long before the murder trial started, we recommended to the Court acceptance of the misdemeanor plea—*

THE COURT: When you say 'our agreement', you mean 'our agreement with Mr. Diaz, counsel for the defendant'?

MS. JOHNSON: Yes.

THE COURT: To which the Court was privy.

MS. JOHNSON: We recommend acceptance of the offer to plead guilty to misdemeanor and furthermore, at the time of sentence we will recommend to this Court, a sentence of time served.

. . . . .

THE COURT [to Ms. Edwards]: Do you, has your lawyer or the Court or the district attorney made any commitment to you as to what the sentence of this Court will be except you heard Miss Johnson say that in the light of our conversations, when I say 'our', I mean *hers and Mr. Diaz, your attorney, to which the Court was privy, that if you did testify on behalf of the People, and if you did plead guilty to a misdemeanor, the district attorney's office would recommend your punishment be the time already served as a result of the indictment against you, and your arrest, and the Court does agree that would be the sentence of the Court. Other than that, has anybody made any promises to you?*

DEFENDANT: No.

. . . . .

THE COURT: All right. In light of the recommendation of the district attorney and the fact that Miss Edwards did appear as a witness for the People, did testify, and that *the agreement apparently made between you and Miss Johnson, the time was agreed, win, lose or draw. There would be a plea to misdemeanor acceptable to the district attorney's office.* In light of all that has taken place and in light of all that the Court is informed about, this Court will sentence this defendant to the time already served in this case, as punishment for the crime to which you pleaded guilty.

DEFENDANT: Thank you." (Emphasis supplied).

Counsel for the parties then reiterated their positions:

"MS. JOHNSON: *Pursuant to the agreement we had, prior to the murder trial, that agreement was made between Mr. Goldsmith in charge of the Homicide Bureau, myself, counsel and the Court, we at this time recommend time served.*

MR. DIAZ: I will stand on the various conferences that we have had." (Emphasis supplied).

Hearing of this exchange to the effect that Edwards had in fact made a deal with the State and that her testimony at his trial had therefore been false, DuBose on July 29, 1975, filed a motion to set aside the verdict on the basis of newly discovered evidence (N.Y.Crim.Proc. Law § 330.30) and to dismiss the indictment because of prosecutorial misconduct (N.Y.Crim.Proc. Law § 210.20). A transcript of the Edwards proceeding was attached.

Justice Sullivan held an evidentiary hearing on September 24, 1975. He heard the testimony of Edwards and her counsel, and of Assistant District Attorneys Johnson, Hayes and Irvin Goldsmith (who had taken part in discussions with Edwards). The parties stipulated that if Justice Bloustein were called he would testify to the accuracy of his statements in the Edwards plea and sentence minutes.

At this hearing all of the witnesses testified that there had been no agreement to

accept a misdemeanor plea or to recommend a sentence of time served. No one from the prosecutor's office had made any notes at the time of the meetings with Nancy Edwards (contrary to standing office instructions). Ms. Johnson, in spite of her clear statements to the contrary before Justice Bloustein on June 9, testified that in exchange for Edwards' agreement to testify she (Johnson) had not agreed to accept a misdemeanor plea in lieu of a plea to a felony and had not made any commitment to Edwards other than to agree, long before the DuBose murder trial, to "do the right thing" for Ms. Edwards. Ms. Johnson conceded that she had discussed with Mr. Diaz reduction of the charge from a felony to a misdemeanor and that she had told Mr. Diaz that, although she would not consent to a dismissal of the indictment against Ms. Edwards in exchange for the testimony, "a misdemeanor was probably more in the realm of a possibility than a felony" and that "equitably I would believe that I had led Mr. Diaz to believe it was a misdemeanor as opposed to a felony." Johnson further testified:

"Q: Was there any discussion that the charge should or would be reduced from felony to misdemeanor?

A: Yes.

Q: And didn't you say on your direct testimony, something to the effect, and we can have it quoted back. I'm merely paraphrasing now that in good conscience or in equity, I would say that Pablo Diaz could have the impression or be led to believe that the charge would be reduced to misdemeanor. Didn't you say something along those lines? We could have your testimony read back for an exact quotation.

A: This is what I said: Included in the discussion was my conferring to the idea to Mr. Diaz that a misdemeanor would be more in the realm of possibility than a felony.

Q: All right. And didn't you then say, and in good conscience and in equity, I would have to say that Mr. Diaz was probably led to believe the charge might be reduced to a misdemeanor? Didn't you say that on your direct testimony?

A: What I said—sure. Yes. That's what I said."

Mr. Hayes testified that prior to the trial he had discussed with Assistant District Attorneys Johnson and Goldsmith (Chief of the Homicide Bureau) and with Nancy Edwards and her counsel, Mr. Diaz, Ms. Edwards' proposed testimony and what consideration she would receive for it. Hayes had been told before trial that no deal had been made with Edwards but knew they had agreed "that we would do the right thing." He described other commonly used versions as "she'll get . . . whatever is there," "we'll do the just thing" and "we'll handle her case."

Mr. Goldsmith, Chief of the Homicide Bureau of the District Attorney's office, gave similar testimony, stating that "The agreement was to give her consideration, and we kept our word." He added that he had told Mr. Diaz that he (Goldsmith) "never had a dissatisfied customer." Edwards and Diaz supported this testimony.

In an opinion dated October 29, 1975, Justice Sullivan denied DuBose's motion, finding that no express or implied commitment had been made to Nancy Edwards and that any understanding that may have existed had come out sufficiently before the jury. He concluded that DuBose had received a fair trial. The Appellate Division affirmed, 61 A.D.2d 1147, 399 N.Y.S.2d 958 (1st Dept. 1977), and leave to appeal to the Court of Appeals was denied, 43 N.Y.2d 837, 402 N.Y.S.2d 1040, 373 N.E.2d 376 (1977).

DuBose then applied to the United States District Court for the Southern District of New York for a writ of habeas corpus, alleging that the prosecution knowingly relied on false testimony to procure his conviction. The Court, in a memorandum by Judge Lasker dated September 17, 1979, concluded that DuBose had received a full and fair hearing in state court and that Justice Sullivan's findings were supported by the record. The application was therefore denied. However, Judge Lasker granted DuBose's application for a certifi-

cate of probable cause and for leave to proceed in forma pauperis. From the denial of the application for the writ DuBose appeals.

## DISCUSSION

■ The principles governing this case are simple and well-settled. Knowing use by the State of perjured testimony deprives the defendant of due process, violating the Fourteenth Amendment and requiring a new trial. This is so whether the prosecutor makes the false statements himself or allows the false statements of a witness to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935); *Taylor v. Lombard*, 606 F.2d 371, 375 (2d Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980); *United States ex rel. Washington v. Vincent*, 525 F.2d 262, 267 (2d Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). It makes no difference that the materially false testimony goes only to the credibility of a witness. *Napue v. Illinois, supra*, 360 U.S. at 269, 79 S.Ct. at 1177; *United States ex rel. Washington v. Vincent, supra*, 525 F.2d at 267.

The State's attempt to reconcile its evidence at DuBose's trial that it had not offered Edwards "any kind of deal or any kind of promise or anything" in exchange for her testimony with its repeated flat statements at the Edwards plea hearing that it made an "agreement . . . long before the murder trial started [to recommend] acceptance of the misdemeanor plea" strains credulity almost to the breaking point. It is difficult to imagine more convincing evidence that a deal had been made than the statements of Ms. Johnson and Justice Bloustein at the June 9 hearing.

However, even if we ignore these unequivocal statements made by the prosecutor to the court and agree that the prosecutors had not agreed before trial to reduce the charges against Edwards to a misdemeanor in consideration for her giving the incriminatory testimony, we would nevertheless be forced to reject as unsupported by and contrary to the undisputed record the State court's finding that there was no "express or implied prior commitment made by the District Attorney to Nancy Edwards," later acquiesced in by the district court, which concluded that "no promises were made to Edwards." 28 U.S.C. § 2254(d)(8); *Townsend v. Sain*, 372 U.S. 293, 316, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963); *United States ex rel. Washington v. Vincent, supra* 525 F.2d at 267. Assistant District Attorneys Johnson, Hayes and Goldsmith testified that before Edwards testified (and as the State court later found) they had promised her (through her attorney, see *Campbell v. Reed*, 594 F.2d 4 (4th Cir. 1979)) that they would "do the right thing" for her in exchange for her testimony against DuBose. Moreover Johnson testified, and it is undisputed, that she indicated to Edwards' lawyer that a misdemeanor plea was "in the realm of possibility." Yet none of this was made known to the jury, which found DuBose guilty on the basis of Edwards' testimony. See *People v. Savvides*, 1 N.Y.2d 554, 558, 154 N.Y.S.2d 885, 888, 136 N.E.2d 853, 855 (1956). Thus the jury labored under the misapprehension that the State had not offered her "any kind of deal or any kind of promise or anything" in return for her testimony when in fact it had at least agreed to "do the right thing," with a misdemeanor plea possible. Had the jury been apprised of this important commitment, which was known to Edwards when she testified and to Assistant District Attorney Hayes when he tried the case, the jury could well have rejected the testimony of this key witness, upon which the State's case admittedly rested.[1]

---

1. Although Edwards revealed her lawyer's prediction that her testimony might bring lenient treatment, the jury could have concluded with good reason that a promise from the State provides an immeasurably stronger incentive to give favorable testimony than the tentative assurance of a lawyer.

This case is governed by the principles applied by us in the remarkably similar case of *United States ex rel. Washington v. Vincent, supra.* There a witness denied having an agreement with the District Attorney when in fact the prosecutor had said he would "see what [he] could do to help him." We found that this was an agreement which should have been disclosed in response to the question put to the witness at trial of whether anyone had indicated that his testimony would get him favorable treatment from the District Attorney. We held that the prosecutor's failure to correct this false testimony violated the Fourteenth Amendment rights of the defendant and ordered the issuance of a writ of habeas corpus unless a retrial was granted.

■ In the present case, when Mr. Hayes asked the witness, "Have I or any other Assistant District Attorney or anyone offered you any kind of deal or any kind of promise or anything in regard to your testimony today?" the truthful answer (as the prosecutor knew) was "Yes." The witness falsely testified "No." The prosecution cannot, by keeping its promises of consideration to a witness general in language or tone, escape the fact that it gives the witness reason to believe that his or her testimony will lead to favorable treatment by the State. Unquestionably agreements in general terms to reward testimony by consideration create an incentive on the witness' part to testify favorably to the State and the existence of such an understanding is important for purposes of impeachment. See *Boone v. Paderick* 541 F.2d 447, 451 (4th Cir. 1976), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1610, 57 L.Ed.2d 811 (1977). The State encouraged Edwards in her belief that testimony favorable to the State would be rewarded. The fact that the promise may not have taken a specific form did not allow the prosecution to avoid disclosing to the jury the fair import of its understanding with the witness when the question arose during cross-examination and redirect. See *United States v. Butler,* 567 F.2d 885, 889 (9th Cir. 1978). Cf. *Gordon v. United States,* 344 U.S. 414, 422, 73 S.Ct. 369, 374, 97 L.Ed. 447 (1953). Failure to do

so deprived DuBose of fundamental due process, violating the Fourteenth Amendment.

■ The only remaining question is whether this violation was harmless. Our standard is that the conviction must fall if

"the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury [or if] the false testimony used by the State in securing the conviction of petitioner may have had an effect on the outcome of the trial."

*United States ex rel. Washington v. Vincent, supra,* 525 F.2d at 267 (quoting *Napue v. Illinois, supra,* 360 U.S. at 271–72, 79 S.Ct. at 1178–1179). See also *Annunziato v. Manson,* 566 F.2d 410, 414 (2d Cir. 1977). In this case, as in *Washington,* we must conclude that the false testimony could have affected the jury. The line of questioning went to the credibility of the State's key witness, without whom it had virtually no case. As in *Giglio v. United States, supra,*

"the Government's case depended almost entirely on [the witness'] testimony; without it there could have been no indictment and no evidence to carry the case to the jury. [His] credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement . . . would be relevant to his credibility and the jury was entitled to know it."

405 U.S. at 154–55, 92 S.Ct. at 766. See also *Boone v. Paderick, supra,* 541 F.2d at 452–53. We cannot say that the violation in this case was harmless.

Accordingly, we reverse the order of the district court with instructions to grant the writ of habeas corpus unless the State accords DuBose a new trial within 90 days of the issuance of the mandate herein.