Larry MILLS, Petitioner,

v.

Charles SCULLY, Superintendent of Green Haven Correctional Facility, Respondent.

No. 86 Civ. 1677 (VLB).

United States District Court, S.D. New York.

Feb. 18, 1987.

Diarmuid White, New York City, for petitioner.

Karen Wigle Weiss, Asst. Dist. Atty., Brooklyn, N.Y., for respondent.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

Petitioner seeks, in this petition for habeas corpus, to set aside his September 12, 1983 New York State conviction, after a jury trial, of murder in the second degree (P.L. Section 125.25 subd.(1)) and criminal possession of a weapon in the second degree (P.L. Section 265.03). Petitioner was sentenced to a term of 20 years to life imprisonment.[1] Petitioner's state appeal was denied by the Appellate Division, Second Department, on November 13, 1984. *People v. Mills*, 105 A.D.2d 759, 481 N.Y. S.2d 411 (2d Dept.1984). His motion for leave to appeal to the Court of Appeals was denied on February 15, 1985. *People v. Mills*, 64 N.Y.2d 891, 487 N.Y.S.2d 1038, 476 N.E.2d 1015 (1985).

On June 7, 1985, petitioner moved to vacate the judgment of conviction pursuant to Article 440 of the New York Criminal Procedure Law, on the grounds that he had

---

1. Petitioner was sentenced to concurrent terms of imprisonment under two counts of the indictment. The conviction for criminal possession of a weapon in the second degree resulted in a three-to-nine year sentence, to be concurrent with a 20-year-to-life term for second degree murder.

been denied due process because of prosecutorial misconduct and ineffective assistance of counsel. This motion was denied without a hearing on September 12, 1985. Petitioner next applied for a certificate granting leave to appeal, which was denied by the Appellate Division, Second Department, on November 19, 1985.[2]

In his petition to this court, petitioner asserts four grounds for relief.

First, he contends that he was denied his right to due process under the Fifth and Fourteenth Amendments when the prosecutor permitted false testimony to go uncorrected, and then exploited this false testimony.

Second, he argues that his trial attorney's numerous errors denied him his right to effective assistance of counsel under the Sixth and Fourteenth Amendments. The ineffectiveness of petitioner's counsel is evidenced, he asserts, by, *inter alia,* the failure of trial counsel to challenge the key prosecution witness when she falsely testified that she did not appear before the grand jury, and trial counsel's failure to take corrective action when the jury specifically inquired about the witness' testimony on this subject.[3]

As a third ground, petitioner alleges he was denied due process under the Fifth and Fourteenth Amendments when the trial court refused to give a requested second degree manslaughter instruction.

Fourthly, petitioner argues he was denied his right to due process under the Fifth and Fourteenth Amendments by other prosecutorial misconduct, including denigration of defense witnesses, and improper reference to petitioner's associations: specifically, the prosecutor's inquiry on cross-examination of the defendant, over objection, into membership in a radical gang.

## II.

Before a petition for a writ of habeas corpus by a state prisoner may be entertained by a federal court, the petitioner must first have exhausted his available state remedies as to the federal constitutional claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984); *Daye v. Attorney General of State of New York,* 696 F.2d 186 (2d Cir. 1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Based on the principle of comity, the exhaustion doctrine requires that a petitioner seeking to upset his conviction on federal constitutional grounds first must fairly have accorded to the state courts a fair opportunity to review the federal claims and to correct any errors alleged:

[A]dequate notice to the state courts that they are to decide federal constitutional claims at least includes:

"(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

*Petrucelli v. Coombe,* 735 F.2d at 688 (*quoting Daye,* 696 F.2d at 194); *see Vazquez v. Scully,* 730 F.2d 868, 869 (2d

---

**2.** The petitioner need not have, and in fact could not have, appealed to the New York Court of Appeals. *See* Bellacosa, Practice Commentary to C.P.L. § 450.15.

**3.** Petitioner has alleged various other ways in which counsel was incompetent which are not considered in this Memorandum Order. Specifically, petitioner asserts that trial counsel failed to do the following:

(a) to prepare properly the petitioner and other defense witnesses to testify (or alternatively, that he was inept in calling them as witnesses);

(b) to prepare to meet the testimony of the assistant medical examiner; (c) to object to the court's instruction on the defense of justification; (d) to object to various improper comments made by the prosecutor in summation; (e) to deliver an adequate summation (and that he was inept in waiving opening argument); (f) to cross-examine adequately the prosecution witnesses; (g) to object at trial to inquiries regarding petitioner's alleged possession of a .22 pistol on another occasion; and (h) to prepare for sentencing.

Cir.1984); *Holland v. Scully,* 797 F.2d 57, 64–65 (2d Cir.), *cert. den.,* —— U.S. ——, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986).

Respondent contends that the petition contains both exhausted and unexhausted claims and that it must therefore be dismissed. Specifically, he alleges that petitioner in this petition for the first time claims deprivation of federal constitutional rights with respect to a) the trial court's denial of his request for a second degree manslaughter instruction, and b) portions of the prosecutor's cross-examination of petitioner and summation. Respondent argues that there was nothing in the nature or presentation of these claims in state court which would have alerted the state courts to their federal constitutional nature. Thus respondent argues that, as to these claims, petitioner has failed to exhaust his state remedies.

■■■ While it is true that the petitioner did not rely on federal constitutional cases or state cases using constitutional analysis in his state appeal, he need not cite "book and verse" of the Constitution in order to present a constitutional claim. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971) (*citation omitted*). Petitioner's third claim in the petition, that the trial court's refusal to give a requested second degree manslaughter instruction violated due process, raises a question that is cognizable on habeas

corpus review. *Brewer v. Overberg,* 624 F.2d 51, 52 (6th Cir.1980), *cert. den.,* 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981). It implicates constitutional concerns, specifically "the concept of 'fundamental fairness' which resides in the Fourteenth Amendment." *Goode v. Wainwright,* 704 F.2d 593, 610 n. 19 (11th Cir.), *rev'd on other grounds,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). "In some circumstances, the failure to give a requested instruction could deprive the defendant of the fundamental right to a fair trial as secured by the Fourteenth Amendment." *Brewer,* 624 F.2d at 52. Petitioner presented the state courts with a factual pattern that should have called to mind "a specific right protected by the Constitution." *Daye,* 696 F.2d at 194.[4]

■■■ Petitioner's fourth claim with respect to prosecutorial misconduct also sets forth facts and claims sufficient to put the state courts on notice that they were being called upon to decide the federal claim now asserted in this court. Petitioner has, therefore, exhausted his state remedies.[5]

### III.

Shortly after midnight on July 5, 1980, petitioner was involved in a fistfight with one Charles Still. During the fight Still was shot. He died five days later.

---

**4.** Neither the Supreme Court nor the Second Circuit has explicitly decided the question of whether due process requires, in a non-capital case, that a jury be instructed as to a lesser included offense. *See Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Harris v. Scully,* 779 F.2d 875, 880 (2d Cir.1985).

**5.** Even if petitioner has not exhausted his third and fourth claims, I may still reach the merits of the exhausted claims. The Supreme Court in *Rose v. Lundy* held that a district court "must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." 455 U.S. at 510, 102 S.Ct. at 1199. *See also Rock v. Coombe,* 694 F.2d 908, 914 (2d Cir.1982), *cert. denied* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 345 (1983). Petitioner by his attorney in a letter

dated July 10, 1986 has informed me that "should the court ultimately determine that any claims are in fact unexhausted, petitioner requests that the petition be deemed amended to delete any such unexhausted claims." July 10, 1986 Letter from Diarmuid White, counsel for petitioner, *citing Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982); *Dean v. Smith,* 753 F.2d 239, 242 (2d Cir.1985); *Hill v. Snow,* 590 F.Supp. 1157, 1160 (S.D.N.Y. 1984).

I find that the petition includes only exhausted claims. Even if it does not contain only exhausted claims, I deem the petition amended to include only the prosecutorial misconduct and ineffective assistance of counsel claims. Since I only consider these claims in my memorandum order, and never reach the merits of the other claims, as a practical matter it makes no difference whether the petition is deemed amended.

On the night of the incident petitioner's girlfriend, Traci Gist, had gone with her cousin, Barbara Smith, to a store on De-Kalb Avenue in Brooklyn. At the store, they saw Gist's brother arguing with Still. The argument was also witnessed by a friend of Still, Lionel Waterman. After Gist's encounter with Still, she left and went to a nearby park where she found the petitioner and some of his friends. She told petitioner that Still had made improper advances toward her at the store. Petitioner and his friends set out to find Still.

Accompanied by Gist and Smith, petitioner and his friends soon caught up with Still and Waterman, and Gist identified Still as the person who had harassed her. Petitioner confronted Still and punches were thrown. According to Waterman, one of the witnesses to the fistfight, Still attempted to "cover up" while petitioner and his friends threw punches at him, and Still in returning the punches knocked the petitioner back. Soon thereafter, a shot was fired and Still fell to the ground.

### IV.

Petitioner was indicted for murder in the second degree, the lesser included charge of manslaughter in the first degree, and criminal possession of a weapon in the second degree.

At trial, the prosecution called three witnesses to the shooting, Waterman, Smith, and Gist. Only Gist testified that she saw petitioner shoot Still. Smith testified that she saw the petitioner hit Still with a shiny object. Waterman testified that he saw the petitioner's hand go to his waist and then he saw what looked to be the butt of a weapon; he began to run and heard a shot a split-second later.

Petitioner's witnesses testified that it was Still who pulled out the gun. Petitioner himself testified that the gun went off as he and Still were fighting for control of the weapon; that he never controlled the gun and did not shoot Still.

Although Traci Gist testified at the trial that she saw petitioner shoot Still, she also testified that on July 12, 1980, one week after the shooting, she had been interviewed by the District Attorney's office and had said that she did not see anyone fire a shot, and that she had more recently told petitioner's trial counsel that she had not seen petitioner shoot the victim.

When asked on cross-examination at the trial if she had ever testified in the grand jury about the case, Traci Gist replied that she had not. She had, however, testified before the grand jury, where her testimony was elicited by the assistant district attorney who later represented the state at the trial. She told the grand jury that she did not see the shooting; that a gun had gone off, and that she had covered her eyes and asked Smith whether it was the petitioner who had been shot.

In his summation, the prosecutor told the jury that Gist had tried to protect the petitioner when she originally said that she hadn't seen the shooting, and that it was her trial testimony that contained the truth. The prosecutor said nothing about Gist's grand jury testimony.

During deliberations, the jury sent out a note which included, *inter alia*, the following requests: (1) "[Gist's] testimony about being questioned in the grand jury"; (2) "all of [petitioner's] testimony"; and (3) a clarification of the requisite intent for second degree murder as differentiated from first degree manslaughter.[6] The judge, who had no knowledge of Gist's grand jury

---

6. The note, as described in the transcript, read as follows:

THE COURT: Gentlemen, I've received the following note from Mr. Goldstein, the foreman of the jury:

"Question, they wanted to have both Tracy's and Waterman's testimony on what happened after the chain was taken.". That's number one.

The second question is, "Tracy's testimony about being questioned in the grand jury."

And the third bit of read back is, "all of Mills' testimony."

Then there is a request to clarify the difference between counts 1 and 1–A and intent.

testimony, instructed the jury that Gist had testified that she had not been questioned in the grand jury. Neither the prosecutor nor the defense attorney made any comment about or objection to this response.

## V.

According to petitioner, the crucial testimony at trial was Gist's statement that she saw the petitioner shoot the victim. None of the other prosecution witnesses so testified. Petitioner contends that Gist's testimony furnished proof of two essential elements of second degree murder: that petitioner *caused* the victim's death and that he *intended* to do so.

Petitioner finds significance in the jury's note which asked simultaneously for a clarification of the instruction on intent and for Gist's testimony with respect to the grand jury. He argues that the two issues are inextricably intertwined: if Gist lied about seeing the shot fired at trial, there was no proof of intent to cause death. Petitioner stresses that Gist's grand jury testimony was under oath and directly contradicted her trial testimony, and that if it had been available to the jury the verdict might well have been different.[7]

Petitioner attributes the jury's ignorance of this grand jury testimony to both the prosecutor and defense counsel, and alleges both prosecutorial misconduct and ineffective assistance of counsel in the petition. I turn first to the parties' arguments with respect to each of these issues.

### A. *Prosecutorial Misconduct*

Petitioner argues that the prosecutor knew that Gist's denial of her appearance before the grand jury was untrue. Conceding that the prosecutor's failure to come forward immediately was excusable since he may have thought that defense counsel would address Gist's denial on cross-examination, petitioner argues that the prosecutor's persistence in remaining silent rather than bringing the error to the court's attention violated due process. Citing a line of Supreme Court cases beginning with *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), petitioner invokes the principle that a prosecutor's knowing use of false testimony results in a deprivation of due process and requires a new trial, and urges that the principle obtains whether the prosecutor has solicited the false testimony or has merely allowed it to stand uncorrected when it appears. Moreover, petitioner stresses that this principle does not lose force because the false testimony reflects only upon the credibility of the witness.

Petitioner acknowledges that this case differs from the Supreme Court cases in one significant respect: defense counsel had known of Gist's grand jury appearance because a transcript of her testimony had been turned over to him in pre-trial discovery. Petitioner frames the issue in this wise: is a prosecutor relieved of his legal and ethical obligation to correct testimony he and defense counsel know to be false whenever defense counsel inexcusably fails to correct the error himself? Petitioner argues that an unfair trial occurred irrespective of who is to blame for it, and that the prosecutor should not be absolved for misleading the jury and the judge.

Respondent contends that the prosecutor's failure to correct what he deems an insignificant error in Traci Gist's testimony did not violate due process. He argues that the erroneous testimony in this case was not a deliberate falsehood, nor did it have any relationship to the question of guilt or innocence. Moreover, he claims that under the circumstances of this case it was not the burden of the prosecutor to correct the error since the grand jury minutes had been provided to the defense attorney. He asserts that defense counsel may have deliberately chosen not to pursue this matter because it was not helpful,

---

**7.** Although Gist was confronted with other inconsistent statements she had made, one to defense counsel and one to the District Attorney's office, petitioner argues that only her grand jury testimony was under oath and would seriously have cast doubt on the trustworthiness of her trial testimony.

since he had already cross-examined Gist with regard to two other prior inconsistent statements identical to the statement before the grand jury.

Respondent believes that petitioner's suggestion that Gist's testimony furnished the elements of second degree murder that otherwise would be missing is baseless. He contends that all three witnesses—Gist, Smith and Waterman—described an intentional shooting. In addition, he argues that the overwhelming evidence of guilt coupled with a weak defense suggests that a positive response to defense counsel's question about Gist's grand jury testimony would not have resulted in a verdict any more favorable to defendant.

## B. *Ineffective Assistance of Counsel*

Petitioner also argues that his trial counsel was ineffective in failing to challenge Gist when she denied testifying before the grand jury and in failing to correct this statement when the jury specifically inquired about her response to this issue. He contends that there can be no reasonable justification for not vigorously challenging Gist on her denial and confronting her with her prior sworn testimony, which had been provided to trial counsel.[8]

Even if trial counsel's failure to bring out Gist's grand jury testimony is attributed to faulty memory, oversight, or confusion, petitioner submits that counsel still had the opportunity to redress his mistake by urging a proper response to the jury's note, which he failed to do. This failure is, according to petitioner, stark evidence of ineffective assistance.

Respondent argues that as a threshold matter this claim of ineffective assistance

of counsel is procedurally barred, since it was raised for the first time by way of a motion to set aside the judgment of conviction and not on direct appeal.

Even if the merits of this claim are reached by the court, respondent maintains that it should be dismissed: counsel's failure to pursue an inconsistency in Gist's grand jury testimony was eminently reasonable as trial strategy, since petitioner's trial counsel in fact cross-examined Gist with respect to two other prior inconsistent statements identical in content to Gist's grand jury testimony. Respondent notes that Gist had explained that she lied on two prior occasions because she wanted to protect the petitioner and because she felt intimidated: thus her explanations tended to bolster her credibility and defense counsel may not have wanted to pursue the matter further.

Respondent cites one other reason why defense counsel's strategy might have led him not to pursue Gist's grand jury testimony: in order to avoid reminding her of her direct testimony concerning a conversation she had had with the petitioner the day after the shooting in which he said he had shot the deceased but did so in self-defense. This statement conflicted with the defense theory at trial, and respondent suggests that defense counsel may well have decided that any benefit to be derived from correcting Gist's memory as to her grand jury testimony was outweighed by the risk. Whatever the reason, respondent argues that defense counsel's strategy should not have been second-guessed either by the prosecutor or the court.

---

**8.** Although petitioner and respondent both allege that defense counsel had a copy of the grand jury testimony of Traci Gist, there is nothing before me which explicitly suggests that to be so, except perhaps the colloquy between Gist and defense counsel as to whether Gist had testified before the grand jury. Defense counsel's questions seem to suggest his familiarity with the grand jury testimony:

Q. Have you ever testified in the grand jury about this case?
A. No, I haven't

Q. Did you ever have a stenographer with a DA take a statement from you in this case?
A. A stenographer with a—
Q. Yes, where they interviewed you—
A. Yes.
Q. They did?
A. Yes.
Q. When was that?
A. January 10th. That's all I remember.

I assume, for the purposes of this petition, that defense counsel did have knowledge of the grand jury proceedings involving Gist.

## VI.

■ The Supreme Court has repeatedly instructed that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor," *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982), and that in order to assert a cognizable claim for ineffective assistance of counsel, a petitioner must demonstrate, *inter alia*, that counsel's deficient performance prejudiced his right to a fair trial—that counsel's errors were so serious as to undermine the reliability of the trial's result. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984). Thus the focus should be not upon the failure of either the prosecutor or the defense counsel to correct Gist's false and misleading testimony, but upon the effect this failure had upon the trial.

For the reasons which follow, I find that petitioner was not accorded a fair trial and is entitled to a retrial.

### A. *Prosecutorial Misconduct*

The general rule which governs this case is that "[k]nowing use by the State of perjured testimony deprives the defendant of due process, violating the Fourteenth Amendment and requiring a new trial. This is so whether the prosecutor makes the false statements himself or allows the false statements of a witness to go uncorrected." *DuBose v. Lefevre*, 619 F.2d 973, 978 (2d Cir.1980) (*citations omitted*). "It makes no difference that the materially false testimony goes only to the credibility of a witness." *Id. citing Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *U.S. ex rel. Washington v. Vincent*, 525 F.2d 262, 267 (2d Cir.1975), *cert. den.* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). However, "[f]or prosecutorial misconduct to warrant the granting of habeas corpus relief, conduct must be so egregious that it renders the trial fundamentally unfair." Project, *Fifteenth Annual Review of Criminal Procedure; United States Supreme Court and Courts of Appeals 1984–85*, 74 GEO. L.J. 499, 812 (1986) *citing Donnelly v. De Christoforo*, 416 U.S. 637, 647–48, 94 S.Ct. 1868, 1873–74, 40 L.Ed.2d 431 (1974).

The cases most closely analogous to this one involve situations where a government witness testifies that he received no consideration in return for his testimony when in fact he had been promised favorable treatment, and the prosecutor makes no effort to correct the perjurious testimony. Two Supreme Court cases are the starting point for analysis. In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the principal state witness testified that he had received no consideration in return for his testimony when the prosecutor had himself worked out an agreement with the witness. The prosecutor did nothing to correct the witness' false testimony. The Supreme Court ruled: "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment ... The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* at 269, 79 S.Ct. at 1177 (*citations omitted*). *See also Scott v. Foltz*, 612 F.Supp. 50 (E.D.Mich.1985).

Thirteen years later, in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the principal government witness testified that he had received no promises in return for his testimony, when in fact such a promise had been made. No correction of the false testimony was made. *Giglio* differs from *Napue* in that the *Giglio* prosecutor presenting the government's case at trial was unaware of the promise; it had been made by another government attorney prior to trial. The Supreme Court rejected the government's plea of ignorance. It held that "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor ... A promise made by one attorney must be attributed, for these purposes, to the Government." *Id.* at 154, 92 S.Ct. at 766. The Court found that because the government's case depended almost en-

tirely on this witness' testimony and his credibility, the due process requirements enunciated in *Napue* required a new trial.

Neither *Napue* nor *Giglio* addressed the problem in the context presented here, where the defense attorney knew of the falsity of a witness' answer.[9] However, the Second Circuit in *U.S. ex rel. Washington v. Vincent*, 525 F.2d 262 (2d Cir. 1975), *cert. den.* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976) provides guidance.

In *Washington* the petitioner had been convicted of first degree murder. During his trial, a key government witness repeatedly denied that he had been offered favorable treatment in exchange for his testimony. The prosecutor, who had promised the witness special consideration, made no effort to correct the perjurious testimony. The petitioner and his trial counsel had reason to doubt the denials of a bargain by the government's key witness. Washington had encountered the witness in jail shortly before the trial, and he revealed that he had been promised leniency in consideration for his testimony. Washington told his attorney of this conversation, but it was not brought to the trial court's attention before or during trial.

Three years after the jury verdict, petitioner's counsel inspected the transcript of a proceeding involving charges against the government's chief trial witness and discovered that promises had in fact been made. Petitioner then brought a coram nobis proceeding and the writ was granted. The Appellate Division reversed, holding the prosecutor's withholding of the disclosure of the promise to be harmless error. The New York Court of Appeals affirmed, and the federal district court denied the petition.

The Second Circuit recognized that under *Napue* such conduct by the prosecutor frequently results in a violation of the right to a fair trial. However, the court was confronted with a factor not present in *Napue* and its progeny: Washington and his counsel at the time of the trial "had reason to suspect the falsity of the witness's answers, but failed to make their suspicions known." 525 F.2d at 262. The Court of Appeals concluded that the petition must be granted under the "particular circumstances" of the case, because the government's behavior substantially prejudiced the petitioner. *Id.* at 263. The Second Circuit cited *Napue* and *Giglio* for the proposition that "[a] conviction obtained through the use of testimony known by the State to be untrue must fall if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury ... [or if] the false testimony used by the State in securing the conviction of petitioner may have had an effect on the outcome of the trial.'" *Id.* at 267 *citing Napue*, 360 U.S. at 271–72, 79 S.Ct. at 1178–79; *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766. *See also Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir.1986). The Second Circuit found that it would be "inappropriate not to permit Washington to challenge the egregious and highly damaging prosecutorial misconduct solely because he and his lawyer may have failed to utilize all available means for exploring the prosecutor's highhandedness at the trial." 525 F.2d at 268.

The case before me is not squarely governed or controlled by *Washington*, *Giglio*, or *Napue*, in that defense counsel here knew more than any of the defense counsel in those cases. The knowledge of a defense attorney of exculpatory material does much to mitigate any malfeasance which might otherwise be attributed to a prosecutor. *See U.S. v. DeLeo*, 422 F.2d 487, 498–99 (1st Cir.), *cert. den.* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970) (where the information is material no prejudice results if defense counsel already pos-

---

**9.** Obviously the fact that *Napue* and *Giglio* involved witnesses who testified that they received no favorable treatment for their testimony when in fact they had also differentiates them from this case, which involves a witness who testified that she did not testify before a grand jury when in fact she did, and gave testimony to the grand jury at odds with her trial testimony. However, the distinction is not material.

sesses the information). However, *Washington, Giglio* and *Napue* all stand for the proposition that if the false testimony affected or might have affected the judgment of the jury then a conviction must fall. That is the case here.

██ The jury note during deliberations explicitly asked about "Tracy's testimony about being questioned in the grand jury." In her testimony before the grand jury, never revealed to the trial judge, Gist had stated under oath that she had not seen petitioner shoot the victim. That testimony was squarely inconsistent with her trial testimony. Thus it is not mere speculation that the jury might have been affected. Moreover, the jury's note coupled its request regarding Gist's grand jury testimony with a request to clarify the difference in intent required for first degree manslaughter as compared with second degree murder. It can be inferred, then, that the jury was linking Gist's testimony to whether they should find the petitioner guilty of murder as opposed to manslaughter.

The jury might not have been convinced of petitioner's guilt of second degree murder beyond a reasonable doubt if Gist's testimony had been made known. At the very least, there is the possibility that petitioner might have been found guilty of a lesser charge than the one of which he was convicted, if the truth as to Gist's grand jury testimony had been made known.

While the facts of this case may, to a certain extent, require an extension of the principles set forth in *Napue, Giglio,* and *Washington,* there is one common thread that runs through all of those cases: that the consequences of a prosecutor's failure to correct false testimony does not "lose force because the perjury reflects only upon the credibility of the witness." *Washington,* 525 F.2d at 267 *citing Napue,* 360 U.S. at 269, 79 S.Ct. at 1177; *Giglio,* 405 U.S. at 153, 92 S.Ct. at 765–66.

Irrespective of the egregiousness of the prosecutor's misconduct, the upshot of any analysis of the facts of this case is that the jury was affected. By its note, the jury at petitioner's trial was obviously grappling with Gist's testimony, and considering whether her trial testimony with respect to witnessing the shooting contributed sufficiently to a finding of intent and cause to satisfy the elements of second degree murder. Her credibility was crucial. The testimony before the grand jury was a factor which the jury should have been able to consider in determining Gist's credibility.

The petitioner's due process rights were violated, and he was denied a fair trial.

### B. *Ineffective Assistance of Counsel*

██ Petitioner's ineffective assistance of counsel claims—which have nine different components—are not procedurally barred. The failure "to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) *citing Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). However, the New York Court of Appeals has consistently advised that ineffective assistance of counsel is as a rule "not demonstrable on the main record." *People v. Harris,* 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 (2d Dept. 1985) *(citations omitted ).* Sufficient facts did not appear on the record to permit adequate review on direct appeal of at least some of the components of the claim of ineffective assistance of counsel. The claim of ineffective assistance of counsel was raised, and exhausted, in a post-appeal state motion to vacate the conviction.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that a petitioner alleging ineffectiveness of counsel as the ground for setting aside a conviction must show (1) that counsel's performance was so deficient and counsel's errors were so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) that counsel's deficient performance prejudiced petitioner's right to a fair trial—that counsel's errors

were so serious as to undermine the reliability of the trial's result. *Id.* at 687, 104 S.Ct. at 2064–65. The Court also held that a petitioner must overcome the presumption that under the circumstances the challenged actions "might be considered sound trial strategy," *Id.* at 689, 104 S.Ct. at 2066 (*citation omitted*). In deciding an ineffectiveness claim, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case …" *Id.* at 690, 104 S.Ct. at 2066.

Under *Strickland*, then, the focus is on whether a defendant has received a fair trial. Petitioner here was not accorded a fair trial.

Petitioner's trial counsel had access to the grand jury testimony of Gist. That being so, there is simply no legitimate basis upon which trial counsel would have ignored this testimony in his cross-examination of Gist. The testimony, made under oath, directly contradicted her testimony on direct examination with respect to her observation of the petitioner shooting the victim. Had the grand jury testimony been brought out, the jury might well have rendered a different verdict. Defense counsel's failure to elicit testimony on cross-examination concerning Gist's grand jury testimony, or to correct the judge's response to the jury's inquiry about Gist's grand jury testimony, significantly prejudiced petitioner's right to a fair trial.

## VII.

Since I find that petitioner was not accorded a fair trial because of the effect on the jury of the failure of either the prosecutor or the defense counsel to correct false and misleading testimony, I grant the petition. If the indictment is not moved for retrial within 60 days of the date of this memorandum order, petitioner shall be released from all further custody with respect to the charges contained in the indictment. "The court trying the case may extend the period for a total not to exceed 180 days from the date on which the order occasioning the retrial becomes final, where unavailability of witnesses or other factors resulting from passage of time shall make trial within 60 days impractical." *U.S. ex rel. Washington v. Vincent,* 525 F.2d 262, 268 n. 18 (2d Cir.1975), *cert. den.* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).

SO ORDERED.