**Larry MILLS, Petitioner-Appellee,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Respondent-Appellant.**

**No. 1289, Docket 87–2133.**

United States Court of Appeals, Second Circuit.

Argued May 29, 1987.

Decided Aug. 26, 1987.

Karen Wigle Weiss, Asst. Dist. Atty., Brooklyn, N.Y. (Elizabeth Holtzman, Dist. Atty., Barbara D. Underwood, Asst. Dist. Atty., Brooklyn, N.Y., of counsel) for respondent-appellant.

Diarmuid White, New York City, for petitioner-appellee.

Before LUMBARD, WINTER and MINER, Circuit Judges.

MINER, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York (Broderick, J.) conditionally granting the petition of Larry Mills for a writ of habeas corpus.

Mills was convicted of murder in the second degree, in violation of N.Y. Penal Law § 125.25(1) (McKinney 1975), and criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03 (McKinney 1980), upon a jury verdict rendered in the Supreme Court, Kings County, on August 10, 1983. He was sentenced on September 12, 1983 to an indeterminate term of twenty years to life on the murder charge and three to nine years on the weapons charge, the sentences to be served concurrently. The Appellate Division affirmed the conviction in a memorandum opinion, *People v. Mills*, 105 A.D.2d 759, 481 N.Y.S.2d 411 (2d Dep't 1984) (mem.), and the New York Court of Appeals denied leave to appeal, *People v. Mills*, 64 N.Y.2d 891, 487 N.Y.S.2d 1038, 476 N.E.2d 1015 (1985). A motion to vacate the judgment of conviction was denied by the Kings County Supreme Court on September 12, 1985, and the Appellate Division, on November 19, 1985, denied leave to appeal from the order denying the motion.

The instant petition for a writ of habeas corpus, pursuant to the provisions of 28 U.S.C. § 2254, was filed after the conclusion of all state court proceedings. The

writ was granted conditionally by Judge Broderick in a memorandum order dated February 18, 1987. *Mills v. Scully*, 653 F.Supp. 885 (S.D.N.Y.1987). Judge Broderick determined that Mills "was not accorded a fair trial because of the effect on the jury of the failure of either the prosecutor or the defense counsel to correct false and misleading testimony." *Id.* at 895. Accordingly, he concluded that Mills' trial attorney did not provide effective assistance and that the verdict was infected by prosecutorial misconduct. We reverse.

## BACKGROUND

During the evening of July 4, 1980, Tracy Gist, the girlfriend of Larry Mills, went to a candy store in Brooklyn with her cousin, Barbara Smith. At the store, Gist came upon her brother, who was engaged in an argument with Charles Still. When she approached the two men, Still allegedly made improper advances to her. She then drove with her cousin to a park near the apartment building where she and Mills lived and reported the incident to him. Joined by some friends who were with him in the park, including Tyrone Gibson, and acccompanied by Gist and Smith, Mills began a search for Still. A short time later, Mills and his group found Still, who was with his friend, Lionel Waterman, on a street near the candy store. There followed an argument between Still and Mills, a brief fistfight and a gunshot that struck Still in the left eye and resulted in his death several days later. The encounter took place shortly after midnight on July 5, 1980.

At the trial, the State called three witnesses who were present during the incident—Waterman, Smith and Gist. Waterman testified that he saw Mills' hand go to his waist, where there was an object appearing to be the butt of a weapon. He then turned away and heard a shot a "split second" later. Smith testifed that she saw Mills strike Still with a "shiny object" and that she heard gunfire a few seconds later. The only eyewitness to the actual shooting was Gist, who testified that she "saw Larry Mills pull out a gun and shoot [Still]."

Joint App. at 123. Mills gave a completely different version of the events. He testified that Gibson snatched a chain from Still's neck; that Gibson and Still began to punch each other; that Still pulled out a gun and threatened to kill Gibson; and that he entered the fray and was tussling with Still when the gun "went off." Mills' testimony was corroborated in large part by the testimony of Clifton Sykes.

When defense counsel cross-examined Gist, he asked her whether she had testified before a grand jury, and she replied that she had not. She did say, however, that her "statement" had been taken by a stenographer and a "DA" on January 10. In fact, Gist had appeared before a grand jury on January 10, 1983, at which time she denied seeing the shooting. Although defense counsel had been furnished a copy of the transcript of the grand jury testimony, he did not pursue the matter further. Later cross-examination revealed that Gist had given two other statements in which she denied seeing the shooting—one to the District Attorney a week after the shooting and one to Mills' attorney sometime prior to trial. When questioned about the variation in her versions of the incident, Gist testified that she originally was trying to "cover" for Mills and that she was afraid of reprisals from his family. She also indicated that she was threatened by members of the Still family and feared reprisals from them as well.

During the deliberations, the jury requested a readback of the testimony of Gist and Waterman relating to events occurring after the chain-snatching episode, the entire testimony of Mills and the Gist testimony "about being questioned in the grand jury." The jury also requested clarification of the distinction between murder in the second degree and manslaughter in the first degree with respect to the element of intent. The court provided the clarification sought and directed the court reporter to read back the requested testimony. The question regarding Gist's grand jury testimony was answered in the following colloquy:

THE COURT: A portion of your question, ladies and gentlemen of the jury, that dealt with Tracy's testimony about being questioned in the grand jury, I think it was the one question that was read to you, were you questioned in the grand jury, and her answer was no. Was there anything else that you wanted in connection with that?

THE FOREMAN: No.

Joint App. at 431. The jury then resumed its deliberations but returned within a short time to request instructions on the elements of criminal possession of a weapon in the second degree. The Court provided those instructions, and the jury retired once again. Twenty minutes later, the jury returned with a verdict of guilty on both counts of the indictment.

In granting Mills' petition, the district court found fault with both the prosecutor and the defense counsel for their conduct in relation to the testimony of Tracy Gist, and made the following observations:

> By its note, the jury at petitioner's trial was obviously grappling with Gist's testimony, and considering whether her trial testimony with respect to witnessing the shooting contributed sufficiently to a finding of intent and cause to satisfy the elements of second degree murder. Her credibility was crucial. The testimony before the grand jury was a factor which the jury should have been able to consider in determining Gist's credibility.
>
> The petitioner's due process rights were violated, and he was denied a fair trial.

653 F.Supp. at 894.

## DISCUSSION

### I. *Prosecutorial Misconduct*

■ "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.... The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). The prosecutor presenting the government's case need not be aware that testimony is false in order for a due process violation to occur; it is sufficient if another government attorney knows about the false testimony and no steps are taken to correct it. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (promise of leniency known to Assistant United States Attorney who presented case to grand jury but not known to Assistant who conducted trial). Even where defense counsel is aware of the falsity, there may be a deprivation of due process if the prosecutor reinforces the deception by capitalizing on it in closing argument, *United States v. Valentine*, 820 F.2d 565 (2d Cir.1987); *United States v. Sanfilippo*, 564 F.2d 176, 178 (5th Cir. 1977), or by posing misleading questions to the witnesses, *United States v. Barham*, 595 F.2d 231, 243 n. 17 (5th Cir.1979). False evidence includes untrue testimony going only to the credibility of a witness. *Napue*, 360 U.S. at 269–70, 79 S.Ct. at 1177; *DeBose v. LeFevre*, 619 F.2d 973, 979 (2d Cir.1980).

■ Prosecutorial misconduct consisting of failure to correct false testimony does not rise to the level of a fourteenth amendment violation unless it can be said that there was a reasonable likelihood that the testimony affected the judgment of the jury or that it may have had an effect on the outcome of the trial. *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766; *Napue*, 360 U.S. at 271, 79 S.Ct. at 1178; *United States v. Petrillo*, 821 F.2d 85 (2d Cir.1987). Such a determination requires an independent examination of the record. *United States ex rel. Washington v. Vincent*, 525 F.2d 262, 267 (2d Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).

■ A review of the entire record here raises a question as to whether the trial testimony of Tracy Gist can be characterized as false evidence at all. Although Gist first testified that she did not appear before a grand jury, she later said that her statement had been taken by a District Attorney and a stenographer on January 10, the actual date of her grand jury ap-

pearance. As any layperson might, she may have misunderstood the nature of the grand jury proceedings in which she took part. Her testimony at trial, if understood in that light, could not be considered misleading, and there would therefore be no obligation on the part of the prosecutor to "correct" it. *See Petrillo*, 821 F.2d at 89 (trial testimony of government witness equivocal and not so misleading as to require corrective action by prosecutor).

Assuming that Tracy Gist's trial testimony was misleading, any steps the prosecutor may have taken to clarify it would have been an unwarranted interference with defense counsel's apparent decision to avoid pressing Gist about her grand jury testimony. The prosecutor knew that defense counsel had a transcript of the grand jury testimony and that the transcript included matter that could incriminate Mills as well as matter that could be used to impeach Gist's trial testimony. The incriminating matter consisted of Mills' admission to Gist that he had shot Still, albeit in self-defense, an admission conceding possession of the gun and inconsistent with Mills' contention at trial that the gun was discharged accidentally during the course of the fight. Even viewed with hindsight, defense counsel's decision to forgo the use of the grand jury testimony seems a reasonable one and must have so appeared to the prosecutor at the time of trial.

Similarly, no fault can be found with the failure of the prosecutor to correct the trial judge's response to the jury's question regarding Gist's grand jury testimony. The judge correctly noted that Gist had answered "no" when specifically asked if she had testified before the grand jury. Any attempt by the prosecutor to modify the judge's response at that point would have been improper, since the testimony by then was concluded and the record was closed.

The prosecutor made no effort to exploit the inaccurate trial testimony, either through the testimony of other witnesses, *Barham*, 595 F.2d at 243, or through argument in summation, *Valentine*, 820 F.2d at 571; *Brown v. Wainwright*, 785 F.2d 1457, 1464 (11th Cir.1986); *Sanfilippo*, 564 F.2d at

179. We reject Mills' contention that the prosecutor "capitalized" on the inaccurate testimony by arguing in summation that Gist was mistaken in the statement she gave to the police several days after the shooting but gave a truthful account of the incident during her testimony at trial three years later. Mills asserts that the argument implied that Gist had not made a more recent inconsistent statement before the grand jury. We find no such implication in the prosecutor's summation. The argument was not misleading in any way, and it was not used to exploit Gist's arguably untrue testimony regarding her grand jury appearance.

Since there was no reasonable likelihood that the testimony alleged to be false affected the judgment of the trial jury, Mills' claim of prosecutorial misconduct must fail in any event. *United States v. Sanzo*, 673 F.2d 64, 68–69 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 128, 74 L.Ed.2d 111 (1982). On cross-examination, Tracy Gist admitted to making at least two prior statements in which she denied seeing the shooting. Her denials were inconsistent with her trial testimony describing the incident. However, her grand jury testimony was no different from the prior statements and, if presented at the trial, merely would have been cumulative. Fed.R.Evid. 403; *see generally* 1 J. Weinstein & M. Berger, Weinstein's Evidence § 403[06] (1986). The trial jury obviously accepted Gist's trial testimony despite further impeaching evidence of threats made to her by associates of the victim and despite several other versions of the incident by other witnesses. The conclusion is inescapable that the result would have been no different if Gist had acknowledged her grand jury appearance and repeated her grand jury testimony. Accordingly, the prosecutor's failure to alert the court about the misleading testimony of Tracy Gist cannot be said to undermine confidence in the trial, and there was no error of constitutional magnitude owing to prosecutorial misconduct. *See United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3386, 87 L.Ed.2d 481 (1985).

## II. *Ineffective Assistance of Counsel* [1]

 A standard of reasonably effective assistance has been established for the performance of the duties of counsel for the defense in a criminal case. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To sustain a claim of defective assistance, a convicted defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, *id.*, and (2) a reasonable probability of a different result in the proceeding but for the errors of counsel, *id.* at 694, 104 S.Ct. at 2068. In assessing counsel's performance, a defendant must overcome a strong presumption that counsel's conduct might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065.

 The district court concluded that the first prong of the *Strickland* test was satisfied because Mills' attorney had access to the grand jury testimony of Tracy Gist and "there is simply no legitimate basis upon which trial counsel would have ignored this testimony in his cross-examination of Gist." 653 F.Supp. at 895. We disagree. As we pointed out in Part I, defense counsel seems to have followed sound trial strategy by deciding to forgo use of Gist's grand jury testimony, which included a version of the shooting different from that advanced by Mills at trial as well as an admission of weapon possession. Weighing the advantages of cumulative impeachment evidence against the disadvantages of incriminating admissions and inconsistent versions of events, counsel's choice to avoid the grand jury testimony *in toto* appears well justified. It surely cannot be said that this choice failed to measure up to any objective standard of reasonableness. Moreover, as discussed in Part I, there is no reasonable probability that the result of the trial would have been different if defense counsel had put the grand jury testimony before the trial jury. *See Cuevas v. Henderson*, 801 F.2d 586, 592 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987).

We have examined the remainder of Mills' contentions regarding the inadequacy of his trial counsel and find them to be without merit.

## CONCLUSION

The judgment of the district court is reversed, and the petition is dismissed.

---

1. By reaching the merits of the ineffective assistance claim, we need not determine whether the claim is procedurally barred because it was not pressed on direct appeal. New York law requires that issues raised by facts appearing on the record be reviewed on direct appeal and that only issues raised by matters outside the record may be the subject of a post-judgment motion. N.Y.Crim.Proc.Law § 440.10 (McKinney 1983); *see People v. Cooks*, 67 N.Y.2d 100, 500 N.Y.S.2d 503, 491 N.E.2d 676 (1986). Generally, a claim of ineffective assistance of counsel rests on matters outside the record and rarely can be resolved on direct appeal. *E.g., People v. Harris*, 109 A.D.2d 351, 491 N.Y.S.2d 678 (2d Dep't), *appeal denied*, 66 N.Y.2d 919, 489 N.E.2d 779, 498 N.Y.S.2d 1034 (1985); *People v. Welch*, 108 A.D.2d 1020, 485 N.Y.S.2d 590 (3d Dep't 1985). It is at least arguable here that Mills' claim is based on matters not appearing in the record and that his motion for post-judgment relief therefore satisfied New York procedural requirements.