**UNITED STATES of America**

v.

**Israel RUIZ, Jr., Defendant.**

**No. 88 Cr. 578 (PKL).**

United States District Court,
S.D. New York.

April 21, 1989.

**146**

Maria T. Galeno, Benito Romano, U.S. Atty. S.D. New York, New York City, for U.S.

Murray Richman, Bronx, N.Y., Christine E. Yaris, New York City, for defendant Israel Ruiz, Jr.

## OPINION AND ORDER

LEISURE, District Judge.

On February 3, 1989, after a three week trial, defendant Israel Ruiz, Jr. ("defendant" or "Senator Ruiz") was convicted of making a false statement to a bank in connection with an application for a loan, in violation of 18 U.S.C. § 1014, as set forth in Count Two of Indictment 88 Cr. 578 (PKL) (the "indictment"). The conviction arose from false statements contained in documents which the defendant submitted to Chemical Bank on April 17, 1985, in connection with a request for a $150,000 loan on behalf of Able Grocery Corporation ("Able Grocery"). Defendant was found not guilty on two other counts of the Indictment; namely, an additional bank fraud count in connection with a 1984 personal loan application, and a perjury count in connection with defendant's grand jury testimony.

Defendant Ruiz has made various post-trial motions. Basically, those motions seek a new trial under Fed.R.Crim.P. 33 on the grounds that: 1) the documents which were the bases for Count Two of the indictment were in fact never submitted to the bank and testimony to that effect was false, and 2) the Government improperly argued in rebuttal summation that defendant Ruiz had no leasehold interest in the supermarket space prior to the 1985 loan

application. Additionally, defendant: 3) moves under the Sixth Amendment of the Constitution for the appointment of new counsel, or the opportunity to retain new counsel, because of ineffective assistance in connection with the circumstances which form the bases of the first two motions; 4) moves for a judgment of acquittal under Fed.R.Crim.P. 29(c); or, in the alternative, for a new trial under Fed.R.Crim.P. 33 on the ground that the verdict was against the weight of the evidence; and 5) seeks other relief that the Court might deem just and proper.

The Court has thoroughly reviewed the post-trial submissions of the parties and the record of the trial itself. Additional evidence was introduced at a post-trial hearing on April 13, 1989, on the issue of submission of the loan documents to the bank, and oral argument was heard. Based on all of the prior proceedings in this case and the papers submitted in conjunction with defendant's post trial motions, the Court's rulings are as follows.

### 1. Submission of the Loan Documents to Chemical Bank.

At trial there was testimony to the effect that the 1985 loan application documents, which were the bases of the conviction, were submitted to Chemical Bank. Defendant now asserts that that testimony was false, and that the records were not, in fact, submitted to the bank.

■ The applicable legal standards for this Fed.R.Civ.P. 33 motion for a new trial, as in all of the post-trial motions, are established and not seriously contested. Basically, if the conviction was obtained through the use of false or misleading evidence which was known to be so by the government, the conviction cannot stand. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Mills v. Scully*, 826 F.2d 1192, 1195 (2d Cir.1987). There were multiple Assistant United States Attorneys involved in the present case; defendant does not allege that the particular Assistant United States Attorney in charge of the prosecution at trial, Maria T. Galeno, Esq., had knowledge of any false testimony. Such knowledge by a *particular* assistant, however, is not required. "It is sufficient if another government attorney knows about the false testimony and no steps are taken to correct it." *Mills, supra*, 826 F.2d at 1195. The relevant entity for knowledge of the falsity of the testimony is the entire prosecution team, which includes individuals involved at all stages of the investigation.

■ Defendant alternatively argues that the failure to identify that the documents were not submitted to the bank constituted impermissible suppression of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A defendant may not establish a *Brady* violation by alleging that the government suppressed exculpatory evidence of which the defendant was aware, but defendant here argues that his penchant to "think ... in global terms [with] ... little recollection of details," did not allow him to be aware of the allegedly exculpatory evidence. Affidavit of Murray Richman, Esq., sworn to on February 23, 1989 ("Richman Affidavit"), at ¶ 6. However, defendant's knowledge, or his duty to possess such knowledge, has not been expressly challenged.

■ The real issue, then, is simple and factual: did defendant Ruiz submit the application documents to Chemical Bank? Such a failure to submit the documents would be material under any standard. Submission of the application to the bank goes to an essential element of the offense, and if defendant could have proven at trial that the application documents were not submitted, it would have been entirely rational and appropriate for the triers of fact to acquit. *See Mills, supra*, 826 F.2d at 1195; *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *United States v. Bagley*, 473 U.S. 667, 678–683, 105 S.Ct. 3375, 3381–3384, 87 L.Ed.2d 481 (1985).

The government's position is that the submission of the documents to the bank is a non-issue, and that the evidence overwhelmingly indicates that the documents

were in fact submitted. After careful consideration of all of the evidence adduced at trial, in conjunction with the post-trial motions, and at the post-trial hearing, this Court agrees.

On September 17, 1986, Robert Pearson ("Pearson") was interviewed in the United States Attorney's Office by Assistant United States Attorney Charles LaBella ("LaBella"), Investigator Merrie Gordon ("Gordon") and former Federal Bureau of Investigation Special Agent Clayton Eads ("Eads"). Pearson is a vice president with Chemical Bank and provided important testimony at trial. During the relevant period, Pearson had an extensive business relationship with defendant, including involvement with defendant's various public and private ventures. LaBella learned at the interview that defendant Ruiz had previously submitted documents to Chemical Bank in connection with the loans, and he then directed Gordon and Eads to retrieve those documents from the bank.

On that same day, Gordon and Eads traveled with Pearson to the Bronx and retrieved the "originals" of the three documents that were presented at trial as Government Exhibits ("GX") 4, 5 and 6. Investigator Gordon testified, and submitted a sworn affidavit, indicating a specific recollection of receiving the originals from the bank. See, Exhibit E, attached to Affidavit of Maria Galeno, sworn to on March 9, 1989 ("Galeno Affidavit"). The government's position was, quite simply, that when the "originals" were taken from the bank, "copies" were made and left in the bank files. At the post-trial hearing, Pearson produced the actual current files from the bank, and those files *did* contain copies of GX 4, 5 and 6. See GX 4–A, 5–A, and 6–A.

Pearson was subpoenaed by both the government and the defendant to testify at the post-trial hearing, and was subjected to extensive cross examination. After the conviction of defendant, but before the hearing, an unsigned affidavit was prepared and sent, on defendant's behalf, to Pearson. See, GX 113. Pearson found portions of that affidavit unacceptable, and refused to sign it. The affidavit essentially asserted that the 1985 loan documents were not submitted to Chemical Bank.[1] To the contrary, Pearson unequivocally testified at trial and at the post-trial hearing that his recollection, and the circumstances, indicated that the documents *were* submitted to the bank by defendant.

At the post-trial hearing, defendant's counsel made much of the fact that the originals of GX 4, 5 and 6 do not bear the initials of Pearson or any other bank employee, and are not date stamped. There are other documents submitted at or around the same time which do bear such markings. See GX 114. There was substantial credible testimony, however, to the effect that the absence of initials is not dispositive of whether the documents were in fact submitted. It was not a policy of the bank to mark documents received. Although Pearson and another bank employee, Lourdes Lucena, often did personally initial documents that they received, it was not the practice of other employees at the bank to so initial submitted materials. Balanced against the overwhelming evidence and testimony tending to show that the 1985 loan documents were submitted to the bank, the absence of Pearson's initials has relatively little evidentiary value.

There is substantial documentary evidence which supports the government's position that the original documents were retrieved from, and thus submitted by the

---

**1.** Specifically, the unsigned affidavit stated, in part:

It is my recollection that Senator Ruiz did not submit the 1985 application to me. Since I was the person the Senator dealt with at the bank and I was the Commercial Credit Officer, I would have been the person the Senator would have submitted the application to. I do not have knowledge that the 1985 application was ever received by anyone at the bank.

A portion of Pearson's prior grand jury testimony indicated that he was previously less than positive that the loan documents were submitted to Chemical Bank. A transcript of that testimony was also delivered, on defendant's behalf, to Pearson after the conviction of defendant.

defendant to, Chemical Bank. The original exhibits themselves bear the signature of Eads and the date "9/17/86." Eads' practice was to date and sign documents received during the course of investigations, and the reasonable inference is that he received those documents from the bank, as the government attests. *Cf. United States v. Garcia,* 718 F.2d 1528, 1534 (11th Cir.1983) ("in the absence of any evidence to the contrary, the trial judge is entitled to assume that an official [Secret Service Agent in charge of investigation] would not tamper with the exhibits"), *aff'd* 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *Brewer v. United States,* 353 F.2d 260, 263 (8th Cir.1965) (" 'where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties' ") (*quoting Gallego v. United States,* 276 F.2d 914, 917 (9th Cir.1960)). Also, the report prepared contemporaneously with the Pearson interview supports the government's assertions that investigators Eads and Gordon retrieved the original documents directly from Chemical Bank. *See* Exhibit D, attached to Galeno Affidavit.

Additionally, there is an inventory list prepared and authenticated by Eads that indicates that the documents were obtained from Chemical Bank on September 17, 1986. *See* Exhibit G, attached to Galeno Affidavit. That document is the subject of some dispute. Defendant's counsel claim that there were no attachments to the list, which catalogue the application documents, when it was reviewed during pre-trial discovery. On its face the document explicitly states, "See attached three (3) pages," and the three page handwritten list is, in fact, attached. The list is captioned under the investigation title "Murray Lewinter, et al," and purports to be an inventory of property acquired from "Robert J. Pearson, Asst. VP Chemical Bank." Eads has attested that the caption is either partly erroneous, or the Lewinter and Ruiz investigations were inter-related. *See* Exhibit F, attached to Galeno Affidavit. Defendant's counsel testified at the hearing, and assert-

ed in an accompanying affidavit, that the Assistant United States Attorney, during pre-trial review of subpoenaed document materials, indicated that the document was not relevant to the Ruiz investigation. *See* Affidavit of Christine E. Yaris, Esq., sworn to on March 17, 1989 ("Yaris Affidavit"). On its face, however, the list appears to be *bona fide;* and, for whatever value it has, it supports the government's position that the defendant submitted the application documents.

The government notes that "copies" of the documents were turned over by the defendant in response to subpoena, and those copies were used during the grand jury investigations. The cover letter to the government by Ruiz' then-counsel, Joseph Jaffe, Esq. ("Jaffe"), indicates that some form of the documents were submitted to the government from the Senator's files. *See* Exhibit H, attached to Galeno Affidavit. Ruiz now claims that those documents were the originals. This appears to contrast Ruiz' testimony before the grand jury, which was read during trial. Before the grand jury defendant unequivocally stated, when shown a copy of the application document and asked if it was "a document you submitted to Chemical Bank or a copy of the document," that "[t]his is one of the copies, I guess, *of the documents that were submitted.*" Tr. at 778 (emphasis added). Again, defendant Ruiz takes refuge in his professed inability to know anything specific about the documents which formed the basis of his conviction, and his position has conveniently changed as the circumstances of this case have evolved.

Pearson wrote a letter to Ruiz in June of 1986 stating that he had received a "loan package" from Ruiz in late 1984, and returned a loan package to Ruiz. *See* Exhibit I, attached to Galeno Affidavit. That letter was issued routinely at the request of defendant's counsel, Jaffe. Pearson testified that he did not actually review specific loan materials, or whether they were in fact returned, but merely issued the letter in the form requested by Jaffe. The fact that the letter only referred to a single 1984

loan was noted by Pearson to be an "obvious" error.

Finally, defendant has produced certain affidavits and testimony which purport to show that the applications were not submitted to the bank. Sonia Rosario, a former employee of Ruiz, testified that she prepared the 1985 application herself, and asserts that she knows it was never filed. *See* Exhibit C, attached to Richman Affidavit. As noted above, another employee of Chemical Bank, Lourdes Lucena, asserts that she did not receive the 1985 application documents, and has no knowledge of whether or not they were ever submitted. This testimony must be weighed against the substantial credible testimony and documentary evidence supporting the government's position.

The Court has considered all of this evidence, and is persuaded beyond a doubt that the defendant submitted the 1985 loan application materials to Chemical Bank. There was, therefore, no prosecutorial misconduct or knowing use of false testimony sufficient to require a new trial under Fed. R.Civ.P. 33, and defendant's motion in this regard is denied in its entirety.

### 2. Summation Argument Regarding a Leasehold Interest.

■ Defendant's second motion for a new trial under Fed.R.Crim.P. 33 is based on the assertion that the government "deliberately misrepresented a critical issue of fact in her summation," namely the absence of a legitimate leasehold interest by the defendant in the supermarket space, which could have been reflected in the loan application.[2] Defendant's Reply Memorandum of Law at p. 12. If the prosecutor deliberately misrepresented facts in her summation, such misrepresentation might rise to the level of a due process violation.

*See United States v. Valentine*, 820 F.2d 565, 570 (2d Cir.1987) (*citing United States v. Universita*, 298 F.2d 365, 367 (2d Cir.), *cert. denied*, 370 U.S. 950, 82 S.Ct. 1598, 8 L.Ed.2d 816 (1962)). If prosecutorial misconduct is found to exist, the Court looks to the severity of the misconduct, the measures taken to cure the effects of the misconduct, and the certainty of conviction in the absence of the misconduct to determine whether the misconduct caused the defendant substantial prejudice. *Valentine, supra*, 820 F.2d at 570.

■ The specific basis of defendant's motion is that a 1982 letter from Ruiz' uncle to the Alliance for Progress (the "Alliance"), produced to the Senator but not introduced at trial, constituted a valid lease under New York law. That letter was signed by the uncle, Angel Ruiz, on behalf of Able Grocery, and by Dorcas Traverso of the Alliance. *See* Exhibit D, attached to Richman Affidavit. That letter clearly indicates that the parties did not contemplate that the letter was a formal lease, but defendant nevertheless argues now that a leasehold interest was created under New York law. *See, e.g., Harlow Apparel, Inc. v. David Pik International, Inc.*, 106 A.D. 2d 345, 483 N.Y.S.2d 258, 260 (1st Dept. 1984).

There was substantial evidence at trial that both Ruiz and the Alliance for Progress did not assume that the Senator possessed an enforceable lease for the supermarket space. The government *itself* introduced evidence concerning the prior lease arrangement, to show that any prior lease was not with Israel Ruiz, and was not in effect when the loan applications were made. A letter from Ruiz to the Alliance was introduced by the government which noted the existence of the prior Angel Ruiz letter, and defendant's continuing "terrible

---

**2.** This argument assumes, of course, that the jury found that the falsely stated valuation of the supermarket interest formed the basis of the conviction. The second count of the indictment under which defendant was convicted, however, also charged a separate fraudulent omission of specific personal indebtedness in the 1985 application. Although at trial defendant argued that neither count should be submitted to the jury,

he did *not* request a specific interrogatory to the jury regarding the separate misrepresentations charged in Count Two. *Cf., United States v. Roman*, 870 F.2d 65, 72–73 (2d Cir.1989).

In any event, as indicated *infra*, defendant's arguments on this point are without merit, wholly apart from consideration of an alternate ground of conviction and any possible failure by defendant to preserve his claim.

problem" about renting the space. *See* Exhibit J, attached to Galeno Affidavit. Testimony from Dorcas Traverso concerning any prior leases was also elicited by the government, Tr. at 637–38, 734–45, and Ruiz' own grand jury testimony that his uncle was no longer involved with the supermarket project was introduced. Tr. at 893–894. Finally, minutes from a meeting of the Board of Directors of the Alliance for Progress which was held after the loan application was made, reveal that the supermarket space was not previously rented to Ruiz. *See* Exhibit K, attached to Galeno Affidavit.

Even on the assumption that the 1982 letter was a lease, the evidence indicates that it was not contemplated as representing an interest of Israel Ruiz, and was in any event no longer in effect by the time that the loan application was made in 1985. This was the government's position from early in the trial, and defendant cannot claim surprise at the argument in summation. Tr. at 637–38. Defendant, in his post-trial motion papers, acknowledges that his own stated position at trial was that the loan application reflected the leasehold value of the supermarket. Memorandum of Law in Support of Defendant's Post–Trial Motions, at pp. 17–18. The government's rebuttal summation was a simple response to this position.

It is undisputed that defendant acquired, through pre-trial discovery, the 1982 Angel Ruiz letter which allegedly constituted the Israel Ruiz leasehold. Richman Affidavit at ¶ 13. For whatever reason, however, that letter was not introduced at trial. The government asserts that a tactical choice was made by defendant's counsel not to introduce the 1982 letter to the jury because, in light of the substantial evidence that there was no leasehold, introduction of the letter would have been disingenuous and detrimental to the credibility of defendant's position. Additionally, argument of a valid leasehold would have to be balanced against the government's other compelling evidence of the falsity of defendant's representations.

In any event, the 1982 letter is not so dispositive as defendant argues, and the trial summations of government counsel do not rise to a level of impermissible factual misrepresentation sufficient to implicate due process. Defendant's motion for a new trial under Fed.R.Civ.P. 33 in this regard is denied in its entirety.

### 3. Ineffective Assistance of Counsel.

The previous discussion is largely dispositive of defendant's novel ineffective assistance of counsel claim. Defendant wishes this Court to disregard its favorable post-trial comments on counsel's effectiveness and to appoint, or allow retention of, new counsel. The basis of this motion is present counsel's self-professed ineffectiveness with regard to the two issues just discussed. The Court's post-trial comments were not, however, merely gratuitous pleasantry. Clearly, the standards for an ineffective assistance claim were not approached in this case.

■ With regard to the first basis, defendant simply had no claim with regard to submission of the 1985 loan application to the bank. This Court has determined that the application was, in fact, submitted. Presentation of evidence to the contrary would have contradicted the grand jury testimony of Ruiz himself, and the various testimonial and documentary evidence noted in this Court's discussion above. Additionally, the "evidence" that defendant now proffers was apparently not acquired until after trial, and the failure to identify such "evidence" rests with defendant, and not with his counsel.

■ Much the same can be said of defendant's claims with respect to the lease. As noted, presentation of the 1982 Angel Ruiz letter would have contradicted a good portion of the evidence in the record, including statements by defendant himself. Failure to clarify ambiguity regarding the leasehold interest may well have been an effective trial strategy. It was, after all, the *government* which sought to elicit specific information regarding any prior lease of the supermarket space.

To establish an ineffective assistance of counsel claim under the Sixth Amendment, defendant must; 1) overcome a strong presumption that counsel's conduct was reasonable and show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms"; and 2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984). *See also United States v. Nersesian*, 824 F.2d 1294, 1320–21 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); *Cuevas v. Henderson*, 801 F.2d 586, 589–90 (2d Cir. 1986), *cert. denied* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987); *United States v. Bari*, 750 F.2d 1169, 1182 (2d Cir.1984), *cert. denied sub nom. Benfield v. United States*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). The District Court is in the best position to resolve defendant's claim of ineffective assistance of counsel, and such a determination must be made in light of "the facts of the particular case viewed as of the time of the counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. The representation of defendant prior to and during this trial falls far short of the *Strickland* reasonableness and prejudice standards, and defendant's requested relief in this regard is denied in its entirety.

*4. Weight of the Evidence.*

Defendant finally urges the Court to enter a verdict of acquittal under Fed.R. Crim.P. 29; or, alternatively, order a new trial under Fed.R.Crim.P. 33, because the verdict of acquittal was not supported by the evidence.

Again, the law applicable to a sufficiency of evidence claim is well-settled. A defendant challenging the sufficiency of the evidence bears a "very heavy burden." *See, e.g., United States v. Wiley*, 846 F.2d 150, 153 (2d Cir.1988); *United States v. Sigalow*, 812 F.2d 783, 784–85 (2d Cir.1987). The verdict must be sustained if there is substantial evidence, taking the view most

favorable to the government, to support it. *Glasser v. United States* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Fiore*, 821 F.2d 127, 128 (2d Cir.1987).

■ In considering a sufficiency claim, a reviewing court must draw all reasonable inferences and resolve all issues of credibility in favor of the jury's verdict. *See, e.g., United States v. Salerno*, 868 F.2d 524 (2d Cir.1989); *United States v. Biaggi*, 853 F.2d 89 (2d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). The pieces of evidence are not to be considered in isolation, but in conjunction. *United States v. Carson*, 702 F.2d 351, 362 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be upheld. *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986).

■ The Court will not further burden an already extensive record with a present recapitulation of the evidence produced at trial which supports each element of the bank fraud conviction. The government has provided a partial summary in its Memorandum in Opposition to Defendant's Post–Trial–Motions, at pp. 22–24. The Court finds that there was substantial evidence to support the elements of bank fraud, including intent to influence the bank, and the jury's verdict of guilty on Count 2 of the Indictment will not be disturbed.

Finally, defendant argues that the standards for a new trial under Fed.R.Crim.P. 33 are much more lenient than those under Rule 29. Memorandum in Support of Defendant's Post–Trial Motions at p. 27. Defendant invites the Court to sit as a "thirteenth juror," and evaluate the evidence without regard to the jury's verdict. The Court notes that such a practice would seem patently inconsistent with the Supreme Court's admonition in *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) that a review-

ing court should not be in the business of weighing the evidence or determining the credibility of witnesses. *See, United States v. Zive*, 311 F.Supp. 857, 859 (S.D.N. Y.1970). Even if the Court were to accept this invitation, however, which is a practice by no means established in this Circuit, a new trial under Rule 33 would not be warranted.

In sum, defendant's post-trial motions are denied in their entirety. Counsel and defendant are ordered to appear for sentencing in Courtroom 36 on May 10, 1989 at 4:30 p.m.

SO ORDERED.